PLANT'S MANUFACTURING COMPANY VS. FALVEY and another.

*Evidence must follow pleadings—Recovery of original debt where paper of third parties assigned as conditional payment—Same when such paper assigned as collateral security.*

1. Action on promissory note. Plea, paper of third parties assigned and received in *payment*. Proof, that such paper was assigned as *collateral security*. *Held*, that under the answer defendants could not raise any question as to whether such collaterals had been collected, had been lost through plaintiff's negligence, &c.

2. Notes of third parties taken in conditional payment of the debt sued on, must be produced at the trial and surrendered or cancelled, or their absence satisfactorily accounted for.

3. Such notes assigned as collateral security may be sued on at the same time as the original debt, and judgments taken in all the suits, and collected to the amount at least of the original debt and the costs in all the suits; but if more be collected, the creditor holds it for the benefit of the assignor.

APPEAL from the Circuit Court for *Racine* County.

Action on a note executed by the defendants *Falvey* and *Reilly*, February 1st, 1859, at ten months, for $529. Answer, that on the 25th of November, 1860, *Falvey* sold, assigned and transferred to the plaintiff promissory notes and mortgages made by third parties, to the amount of about $2,000, *in satisfaction and payment* of the claim set forth in the complaint, and of a certain other claim of the plaintiff against *Falvey*.

On the trial, after the plaintiff had put in evidence the note sued on, and rested, *Falvey*, as a witness for the defendants, testified: "I sent the notes mentioned in the answer to the plaintiff, *as collateral security*. * * Never have been notified that any of the notes would not be collected. * * We gave Adams (plaintiff's attorney) names of our agents to whom to send notes for collection. They were to collect them, and apply the proceeds on the notes in suit as they matured." This evidence was received against the plaintiff's objection. On cross-examination the witness said: "I requested Adams to send the notes off for collection. There was no understanding that I was to give security for costs if suits were commenced

to collect said notes. I have collected none of the notes myself. * * Do not know whether any of them have been paid." John B. Adams, Esq., for the plaintiff, testified that the note described in the complaint, and also the bill of exchange on which plaintiff's other claim against *Falvey* (referred to in the answer) was founded, were received by him from the plaintiff for collection May 15, 1861; that about the same time he received from the plaintiff other notes and a mortgage, which the plaintiff represented as having been turned over to him by *Falvey* as collateral security. Not one of these collateral notes was indorsed by *Falvey* or *Reilly*, though nearly if not quite all of them were payable to *Falvey's* order; and none of them were due until October, 1861; the amount that fell due then was between $600 and $700; the rest, $1300 or $1400, became due in 1862, 1863 and 1864. "I told *Falvey* that as the notes were small in amount and large in number, &c., * * he must give us an agreement in writing, indemnifying us against costs in case of failure to collect by suits. He said he would give us such an agreement, but never did so." Amzi P. Plant, who transacted the business for the plaintiff, testified that the notes and mortgage were received by express about November 30th, 1860; that at the same time a letter was received from *Falvey*, the substance of which is as follows: "Your favor of the 29th inst. just received. In reply I would say, if I live I will pay your claims all right and satisfactory; but they all mature before any of the paper due me. I [send by express] a lot of farmers' notes, as per schedule, and will commence sending you some money within a very few days, I hope, and by the 15th of August (?) will have, if not fully paid your claim, reduced it very much." To this letter witness replied November 30th: "Yours of 24th inst. was duly received, also notes by express as per statement. The notes, we understand, we are to hold as *collateral*, as you promise to send us cash drafts soon, and to have us fully paid if possible by 15th January next; we shall certainly expect you to remit to us as

promised.   As we are needing money so badly, and hoping we may be able to use your note in some way, we want you to send us your note, say December 1st, 1860, at three months, for the note of F. & R. [the note here in suit] for $529.18, due December 1st, 1859, adding $1.62 for costs of protest, and 15 months' interest, which you wrote me some time ago you would pay, at ten per cent.   *   *   We want money so badly, if you will send us cash draft on New York for $530.80, within ten days, we will give up the note and lose the interest, which will amount to over $50.   Please do it."   To this letter was added a postscript: " Please send note or draft as requested *soon*, as we need it much."   The witness testified that subsequently to this correspondence he had never at any time had any conversation with either of the defendants relative to the payment of said notes.

The court instructed the jury, in substance, that if, as claimed by defendants, the plaintiff received the notes as collateral security, agreeing to collect and exhaust them before any claim should be made upon the defendant, then the plaintiff must be charged with the amount of such collaterals, unless he showed a failure to collect them after due diligence, or that diligence would have been of no avail in consequence of the insolvency of the makers, or for other reasons ; but that if they were received simply as security or indemnity for the payment of the defendants' notes, and without any agreement to collect them, or in any way to apply or use them, except to hold them as security for such debt, " then the mere possession of the collaterals is no payment of the debt or defense to its collection, any further than the plaintiff has actually realized the money on them."   To this proposition the defendants excepted.

Verdict and judgment for the plaintiff for the whole amount claimed ; and the defendants appealed.

*Paine & Millet*, for appellants :

1. When negotiable paper is received by a creditor as collateral security, he must use due diligence to present it for

payment, and to notify indorsers, if any; and *laches* in these respects makes the debt his own, and releases the original debtor. The court should have left it to the jury in this case to say whether the company had been guilty of any such *laches*. *Dayton v. Trull*, 23 Wend., 346; Edwards on Bills, 201; *Douglass v. Reynolds*, 7 Peters, 128; *Southwick v. Sax*, 9 Wend., 122; *Kearslake v. Morgan*, 5 Term, 513; Am. Law Register for May, 1865, p. 440. 2. The plaintiff could not recover in this action without producing these collaterals and surrendering them to the defendants. Edwards on Bills, 204; *Harris v. Johnston*, 3 Cranch, 311; *Pintard v. Tackington*, 10 Johns., 104.

*Adams & Hand*, for respondent, contended that the defendants on the trial abandoned their answer—which was that the farmers' notes &c., were taken in *payment*—and substituted an entirely different defense, which they could not do even by amendment of the answer (*Fagen v. Davison*, 2 Duer, 153; *Hunt v. Fire Ins. Co.*, id., 481; *N. Y. Mar. Iron Works v. Smith*, 4 id., 362; *Grosvener v. Atlantic F. Ins. Co.*, 1 Bosw., 469; *Catlin v. Hansen*, 1 Duer, 327); and the charge objected to, whether right or wrong, was foreign to the issue, and no cause for a new trial or a reversal. 3 Gra. & Wat. on N. T., 792. 2. The proposition excepted to is correct. To entitle the defendants to resist the payment of their debt, they must show that they have sustained damage by reason of the want of due diligence on the part of the plaintiff in collecting the collaterals. Story on Prom. Notes, 284; 7 Met., 407.

The following opinion was filed at the June term, 1865.

DOWNER, J. The circuit court instructed the jury as follows: " If the collaterals were received simply as security or indemnity for the payment of the defendants' notes, the one in suit amongst others, and without any agreement to collect such collaterals, or in any way to apply or use them, except to hold them as security for such debt, then the mere possession of such collaterals is no payment of the debt or defense to its col-

lection any further than the plaintiff has actually realized the money on the collaterals." It is contended that the instruction is erroneous, because the court did not leave it to the jury to say whether the company had been guilty of any *laches* in neglecting to present the collaterals for payment, or in collecting them, so as to make them its own. This raises the question whether, when notes are transferred as collateral security without any special agreement, the law implies an agreement on the part of the assignee to use diligence in the collection of the collaterals; and, if he did not, whether the burden of proof is on the plaintiff or defendants to prove loss by negligence. The defendant's attorney cites various authorities to the point that the burden of proof is on the plaintiff. They are all authorities, however, in cases where notes were delivered as *conditional* payment, and not where they were transferred as *collateral* security. In cases where the plaintiff has received a note as conditional payment of a claim or debt, and he sues on such claim, he must bring the note received as conditional payment into court, to be cancelled or surrendered, or satisfactorily account for it, before he will be permitted to recover. But if notes are assigned as collateral security for a debt, the holder may at the same time, unless there is an agreement to the contrary, bring different suits, one on the original debt and others on the collaterals, and prosecute them all to judgment, and collect on the judgments at least the amount of the original indebtedness and the costs in all the suits. If he collects anything on the collaterals after the indebtedness which they were assigned to secure is paid, he receives it, of course, for the benefit of the assignor. In this case, the defendants set up in their answer that the notes, transferred according to the proof as collateral security, were transferred in *satisfaction and payment* of the plaintiff's claim. They failed entirely to prove this defense, but did prove the transfer as *collateral* security. This is an entirely different defense from that set up in the answer. To set up the transfer of the collaterals as a defense,

they must have not only averred their transfer but that they had been paid, or some of them; or that the plaintiff undertook to collect them, and their conversion to his own use, or their loss, or something equivalent, on account of the negligence of the plaintiff. And having made these averments, at the trial they would have had to prove them. The defendants than had no right, under the answer, to raise any questions whatever respecting claims transferred as *collateral security*; and if they had, the burden of proof was on them to show loss of the collaterals by the negligence of the plaintiff.

It follows that there is no error in the instruction to the injury of the defendants.

*By the Court.*—The judgment of the court below is affirmed, with costs.

A rehearing was denied at the January term, 1866.