### WOLFF and others vs. McGAVOCK.

*Action, right of, accrues when.   Contract, construction of.*

1. Where M. delivered a note and mortgage to W. as security for future advances by W., and afterwards drew upon him (not having any funds in his hands) W. had a right of action *immediately* to recover the amounts paid on such drafts, in the absence of any agreement to the contrary, although the note and mortgage were not due.

2. A contract by which defendant was to construct a section of railroad for plaintiffs, provided that plaintiffs might make such changes in the *location* of the road and in the *grade line* as they might deem expedient, and only the actual *amount of work* consequent upon such changes should be paid for, at specified rates.   It further provided that for the movement of earth defendant should be paid only once, i. e., as embankment *or* as excavation, according as one or the other exceeded in amount.   *Held*, that for *waste* of excavated earth caused by a subsequent change *from embankment to tressel work*, at a certain point, defendant might recover — the above provisions of the contract not applying to such a change.

APPEAL from the Circuit Court for *Rock* County.

The plaintiffs commenced two actions against the defendant, one upon six and the other upon three bills of exchange drawn on them by the defendant, which actions were, by order of the court and by consent of parties, consolidated and tried as one.

The defendant, by his answer, alleged that previous to the date of any such bills, he gave the plaintiffs a note for $5,000, payable six months after date, and secured by chattel mortgage, to secure them for future advances to be made by them from time to time on his drafts; that the moneys paid by the plaintiffs on the bills mentioned in the complaint were paid and advanced in consideration of such note and mortgage, which were still held by them; and that said note was not yet due; and denied that at the commencement of the action he owed the plaintiffs anything. For a further defence he alleged that he entered into a contract with the plaintiffs, which he had performed on his part, to do certain work in the construction of a railroad; that after he entered upon the work, the plaintiffs so changed the grade of the road as to increase the average distance of hauling, and greatly increase the expense; and changed the character of the work by putting in a tressel bridge in place of an embankment, so that he was obliged to waste much earth which would otherwise have gone into the embankment, and for which he would have received pay; and claimed to recoup his damages for the loss sustained by him in consequence of such changes; and also alleged, as a set-off to the plaintiffs' claim, that the plaintiffs were indebted to him for ten per cent. of the contract price of the work done by him, reserved by them under the contract, which they wrongfully retained.

The plaintiff replied, denying the counter-claims, and particularly that defendant had performed his part of the contract, or that they had failed to perform it, or that the defendant had sustained any damage by reason of any failure on their part.

The particular provisions of the mortgage and of the railroad contract on which the case turns, and the evidence relative to changes in the character of the work, and their effect

upon the defendant, so far as material, are stated in the opinion of the court. The court charged the jury that the plaintiffs were entitled to recover the whole amount of their claim, less 90 per cent. of the contract price of the work done by the defendant under his contract, according to the engineer's estimate, during the last month he worked on the job, with interest thereon.

The jury returned a verdict for the plaintiff, and, a motion for a new trial having been overruled, judgment was entered in accordance with the verdict, from which defendant appealed.

*Todd & Winans*, for appellant, contended that by the giving of the $5,000 note and its acceptance, the appellant was entitled to six month's credit, and the actions on the drafts drawn on the fund so created were premature, being brought before the expiration of that credit; that the testimony offered by him to show the statements of the plaintiffs as to the character of the work, whether embankment or excavation, made at the time the contract was entered into, ought to have been admitted, and the questions of fact as to the changes subsequently made, and their effect upon the defendant, ought to have been submitted to the jury.

*Williams & Sale*, for respondents, argued that the $5,000 note, being mere collateral security, could not operate to suspend the right of action on the claim so secured, without an agreement to that effect, citing *Plant's Manf'g Co. v. Falvey*, 20 Wis., 200; that no change was made in the grade or plan of the work which was not justified by the provisions of the contract; that the defendant had not fully performed his contract, nor shown a valid excuse for not doing so, and therefore was not entitled to the reserved ten per cent. on the contract prices, citing *Jackson v. Cleveland*, 19 Wis., 400; 3 Parsons on Contracts, 159–163, and notes and cases cited.

COLE, J. It is objected that the action upon the drafts in suit was prematurely brought. It is claimed that the evidence

shows that they were drawn upon a fund in the hands of the plaintiffs, which was created by the chattel mortgage and $5,000 note, and that an action on them could not be maintained until the six months' credit given on this note and mortgage had expired. But the obvious answer to this objection is, that it is expressly stated in this mortgage that it is given merely as " collateral security " for the payment of such sums of money as the plaintiffs should advance to the defendant. It was not provided that six month's credit should be given on the moneys advanced, or that the right of action should be suspended on the original indebtedness for that period. Of course, no action could be maintained upon the note and mortgage taken as collateral security until they became due. But as they were confessedly given merely as *collateral security* for future advances, there is no ground for saying that the plaintiffs were bound to wait until the time when these collaterals became due before they could bring suit upon the acceptances. For no right of action was suspended on the original indebtedness during the currency of the collateral security, but the money became due on such original debt according to the terms of the contract. *Plant's Manufacturing Co. v. Falvey*, 20 Wis., 200. In this case it appeared that the defendant had no funds in the hands of the plaintiffs to meet these drafts, and the money paid on them was paid for his accommodation, and became due presently. This proposition seems too plain to require further remark. There is, therefore, no reason for claiming that the action on these drafts was prematurely brought.

One of the important questions in this case was, whether, after the taking of the contract by the defendant, the plan or character of the work on the road was changed from embankment to tressel work, to his injury. It was claimed on the part of the defendant, that a material change in the plan or character of the work was made, by putting in tressel work or a wooden bridge in the place of embankment; and that this change was prejudicial to him, because he was compelled to waste dirt, in

consequence of the substitution of the bridge, which would have gone into embankment in the place of the tressel work, and for which he would have secured pay under the contract. The circuit court, however, held that the plaintiffs had the right under the contract to make this change in the character of the work, and that if, in consequence of it, earth was wasted that might have gone into embankment but for such change, the defendant was not entitled to recover any damages therefor. The clause in the contract relied on to sustain this view, is the following: "It is further mutually agreed, that the party of the second part may make such changes in the location of the road, as well as such variations in the grade lines of the same, as they may consider expedient, and whether such changes shall increase or decrease such work, *only the actual amount of work consequent upon such changes shall be paid for*, at the regular prices agreed upon below." There was a further clause in the contract, which provided that for the movement of earth or rock the same was to be paid for only once; that is, either as embankment, where this exceeded the excavation, or as excavation, when this exceeded the embankment.

Now, there was testimony in the case which tended to show that considerable earth was "borrowed" and placed in the embankment, under the grade and plan of the road at the time the defendant so borrowed the earth, for which he would be entitled to receive the contract price. Also that, afterwards, in consequence of the plan being changed and tressel work being substituted for embankment, the defendant was compelled to waste an amount of earth taken from the excavation equal to the quantity borrowed. And the question, therefore, became important under the contract, who was to sustain this loss consequent upon the change in the construction of the road. If, under the contract, the plaintiffs reserved to themselves the right to change the work from embankment to tressel work, then the defendant must sustain it.

Undoubtedly the plaintiffs reserved to themselves the right, under the clause of the contract above quoted, to make any such change in the location of the road, and in the grade, as might be deemed expedient and necessary, whether such change should increase or decrease the amount of work to be done, only paying the contract price for any extra work consequent upon the change. The contract is clear and specific enough upon that point. But a change from embankment to tressel work can hardly be said to be either a change in the location of the road or a variation in the grade lines of the same, but it is a fundamental change in the character and nature of the work. Suppose the plaintiffs had directed tressel work, piling or mason work to be put in wherever an embankment was to be made, would it be claimed that they had authority to do this under the above provision of the contract? Any such change would make a very profitable contract absolutely ruinous to the contractor. And it is apparent that if they have the right to substitute tressel work for any part of the embankment, they have the right to substitute it for the whole, and may thus make a complete and total change in the nature and character of the work. We do not think the contract is fairly susceptible of any such construction. It is said on the part of the plaintiffs, that if, by the original grade line, there had been no ravine at the point where the tressel work was to be put in, and upon that plan the defendant had wasted 20,000 yards of earth at the cut, precisely as he did do, and then the next day the plaintiffs, by their power under the contract—the nature of the ground being such as to permit it—had changed the location of the road to the right or to the left so as to cross a ravine near by, requiring 20,000 yards of earth for embankment, the defendant's labor might have been doubled by this change, but yet he could receive no compensation for this extra work under the contract. But, manifestly, if he could not, it is because the plaintiffs have clearly reserved the right to change the location of the road, which involves all these possible consequences.

. .But, as they have not reserved the right to change the character of the road-bed from embankment to tressel work, if they do so to the injury of the defendant, they should make good his loss.

It is further said that the evidence showed that the original plan of the work was not changed before the defendant abandoned his contract. But this was a question of fact, which should have been submitted to the jury upon the evidence.

We.have carefully considered the other exceptions taken by the defendant to the rulings of the court below, and think them untenable. But, for the error of the court in the construction of the contract in the particular already referred to, there must be a new trial.

*By the Court.*—The judgment of the circuit court is reversed, and a new trial ordered.

LYON, J., took no part.