TROTTER *versus* CROCKETT.

It is competent for a defendant to show by testimony, that an instrument assigned as a conditional payment or collateral security of a pre-existing debt; was good and available in the hands of the plaintiff, at the time of assignment and afterwards.

A judicial insolvency can only be established by an exhaustion of all the means supplied by law against the purse of a debtor: and the insolvency of a party will not be presumed on the bare return of *nulla bona*, to a *fieri facias* issued against his effects.

The holder of an instrument, (transferred as conditional payment or collateral security) is not bound first to sue thereon,—or to offer to, or return the same; in order to maintain an action on the original debt or consideration, intended to be secured by such instrument.

Where paper securities have been transferred as an *absolute payment* of a pre-existing debt, then no resort can be had on such debt, or its original consideration—and the party receiving the same must take his recourse on the paper so transferred—(unless indeed they be forged, or fraud be committed in the representation of their value.)

But if the transfer of paper be intended merely as a conditional payment, or as a collateral security, the successful pursuit of the original debt, will depend on the fact, whether or not *laches* has been committed by the holder, whereby any liability on it has been lost to the party transferring it.

This action was trespass on the case, instituted by the defendant in error, in the Circuit Court of Lawrence.

The plaintiff declared, (with other counts,) on an undertaking in writing, executed by the mercantile firm of Trotter & McGonegal, (of which Trotter was survivor,) whereby, the latter, in consideration of goods, wares and merchandize before that time sold and delivered, agreed to pay the plaintiff a certain amount of money, *in cash notes, on solvent men in Lawrence county.*

The declaration averred, that the notes (which it appeared had been transferred, in pursuance of the agreement,) were wholly valueless, and useless in the hands of the plaintiff, whereby an action had accrued,

&c. During the trial, the defendant offered to prove, that certain of the notes transferred, were good, and had been lost through the negligence and *laches* of the plaintiff, which proof the Court rejected. The defendant asked the Court to instruct the jury, that if they believed from the evidence, that by proper diligence the amount of certain of the assigned notes could have been recovered from the payors—or that the same had not been returned, or offered to be returned, to the defendant; the action was not sustainable : which the Court refused, and charged the jury, that the transferree of a note was not bound to pursue the transferror, in order to return it.

Judgment on the verdict of a jury, being rendered for the plaintiff, the defendant brought the case, by bill of exceptions, into this Court.

ORMOND, for Plaintiff.—We maintain, that the reception of the contract of indorsement, imposed on the receiver of any note, under the contract, to pay cash notes, the obligation to use due diligence, or at least an offer to return the note. The Court, therefore, erred in instructing the jury, that the plaintiff was not bound to pursue the endorser. One of these notes was endorsed by Green. Crockett received this note, among others, and gave up the agreement. He received it then in the same way that others receive such notes, that is to pursue the endorser with due diligence. If he did not pursue the endorser, he should at least return the note or notes, so endorsed. This he is certainly bound to do in all cases, unless the notes be clearly of no value. Green was unquestionably solvent. He was the endorser, and not the maker. I am not sure that this does not come up to the literal fulfilment of the contract. But at any rate,

the party might receive such endorsement; and he did receive it. He brought suit upon the note; brought it wrong; suffered a non-suit; made no effort to return the note; kept it ten or twelve years, till his remedy was lost; and now seeks to make us liable upon the original contract. Why was the note, for which Green was bound, not paid long since? Merely because Crockett held the paper, and neither offered to return it, or pressed the collection of the debt.

The Court also erred, as we contend, in rejecting the evidence offered by Trotter. The maker of one of the notes was solvent at the time of the endorsement, and continued so for some time afterwards. The party did not agree to guarantee the continued solvency of the makers or endorsers of the notes; and the Court cannot extend the contract beyond the agreement of the parties. The return of *nulla bona* against Harris, was therefore, not conclusive; and it would not have been so, if the contract had even extended to the continued insolvency of the maker of the note. Such return could only be *prima facie* evidence; and the Court should have permitted us to prove that we had complied with our contract, and had transferred notes on solvent men to the obligee.

Besides, I make the point, that the plaintiff should have proved that he used due diligence. He cannot stand on a better footing than an assignee under the Virginia statute, who is permitted to sue in his own name. He must shew that he has used due diligence.

The case, however, does not rest on want of proof. There is proof that due diligence was not used; that suit was brought in an improper manner; and that a non-suit was suffered, which is a voluntary act.

P. ANDERSON, *contra.*—The case shews an obligation due, to be paid in cash notes on solvent men in Lawrence county. Among the notes delivered, was one on Perine, endorsed to Green, and by him to Trotter. The obligation, let it be observed, was to pay in *notes.* An endorsement is not a note. The maker of a note is bound directly ; the endorser, upon a contingency. If it be pretended that the endorsement was taken as a note, it must have been upon a new contract. Where is the contract? The counsel speaks of *due* diligence : upon what principle was diligence *due?* We were bound to receive notes ; and we could not tell the solvency till tested by a suit. The endorsement of Green simply enabled the plaintiff to sue in his own name. We could not refuse the endorsement ; but we did not receive it in payment : it was the note that we received in payment, on the implied condition, however, that Perine was solvent. Our commencing a suit against Green, was only so much more than we need have done. This was the act of one of the parties only, and no evidence of contract.

But it is said that we ought to have returned the note. That depends on the question, whether we made any contract to that effect. The most that can be conceded on the subject is, that all the circumstances might have been left to a jury, to determine whether they amount to any evidence of contract, to receive the endorsement, or to return the paper.

If one has the property of another tortiously in his hands, he is bound to return it without demand ; but if it be put into his hands by the other party, that party must demand the property before the receiver is bound to return it. If the note is worth nothing, it need not be returned. Well, Perine got a perpetual

injunction against the note. It was then of no value. But, it is said, the endorsement was of some value. Perhaps it might have been; but according to the view which I take of the subject, this is unimportant. The Court did not err in refusing to usurp the province of the jury, and decide how far there was evidence of any contract, to pursue the endorsement, or to return the note. If we received the endorsement as collateral security, and not as payment; it is clear that we might have sued upon it—that we were not bound to return the note; and yet we would have been under no obligation to continue to follow up the claim against Green.

The jury in this case, having found against Trotter, it must be presumed that they found that there was no contract to receive the endorsement as conditional payment, or to return the note.

Besides, Trotter received this note from Green after it was due, as conditional payment of a merchandize account. Perine told Trotter that it was a gambling note, and that he would not pay it. Was it not bad faith then, to have passed it off? The note being of no value, Trotter could have sued on his merchandize account: the return of the note was therefore unimportant.

That to have instructed the jury as required, would have been usurping the province of the jury, sufficiently appears from the decision of the case when it was here before. The Court is referred to the opinion then given.

As to Harris, it is said that Trotter offered to prove that he was solvent at the time of endorsement, and for some time after. It does not appear that exception was taken to the opinion of the Court on this point; nor does it appear that any particular testi-

mony was given, or that any witness was introduced. A mere offer to prove was not sufficient. The express testimony that the Court rejected, should have been shewn. " Solvency" requires a definition. It must be legal solvency; that is, the man must be in a condition that money can not be made out of him by execution. The want of this solvency, the return of *nulla bona* establishes. This is not merely *prima facie.* The insolvency of Harris being thus established, would the Court permit a witness to come in and say, "I know this person has property in such a county," and thus require the party to pursue the supposed property in that quarter ? He might in the same manner be driven from point to point, for an indefinite length of time. The introduction of evidence in such a case to contradict the sheriffs's return, is not allowable.

HOPKINS, in reply—cited *Marr, ex'ix,* vs. *Southwick, Cannon & Warren, page* 351 *of this volume—Minor's Rep.* 314—1 *Stewart,* 370.

By Mr. Justice THORNTON :
This was an action on the case, brought by the defendant in error, in the Circuit Court of Lawrence county ; the declaration in which, contained various counts, and among them, one on a special assumpsit in writing, whereby Trotter & McGonegal. a mercantile firm, of which Trotter is survivor, promised to pay to Crockett, the sum of three thousand five hundred and sixty five dollars and fourteen cents, in cash notes, on solvent men in Lawrence county, Alabama, on or before the 1st of January, 1822, for value received. During the progress of the trial, a bill of exceptions was taken, on which the assignment

of errors is made in this Court, which relates to the rejection of testimony offered by Trotter; to the refusal to give instructions which were prayed for by him; as also to the charge given.   We think there is no good objection to allowing the first assignment to be made.   The bill of exceptions shews, that the rejected testimony was offered; and excluded on the motion of Crockett's counsel; and though the words " to which opinions the defendant excepts," are at the close of the bill of exceptions, we think they embrace every matter of opinion contained in it.   With regard to the language in which this matter is set forth in the bill, it is that usually adopted; and I think it necessarily implies, (the record not shewing the contrary) that the means of making the proof offered were present, and instantly available.

It appears that, when the note described, as above stated, in the count, became due; by endorsement in the name of the said firm, promissory notes were transferred to Crockett, to the amount of the said note; and that it was surrendered by him to the makers. Among the notes so transferred, were two of the following description: one made by James Perine to William Green, due 4th April, 1821, and assigned by him to plaintiff in error; the other made by Joel D. Harris, due 15th January, 1822.

The evidence offered by Trotter which was rejected, was, that the maker of this last note, Harris, was solvent, at the time of its endorsement to Crockett, and afterwards.

The assignment of error presents but two questions for our consideration.   The first is, whether, according to the true intent and meaning of the written contract of Trotter, irrespective of any agreement at the time of endorsing these notes, the note of Harris

did not, to the extent due upon it, constitute a payment and satisfaction of the original note or contract sued upon.

The second question is, whether if *laches* have been committed by Crockett with regard to the other note, whereby the liability of any party, who was on it, was lost to Trotter, he would not also be entitled to a credit to that extent. The first point above stated, is embraced by the assignment relating to the rejection of the proof, that Harris, the maker of one of the endorsed notes, was solvent at the time of the endorsement, and subsequent thereto. A just construction of the original contract or note, will determine the propriety of the rejection of this testimony. The contract was to pay in cash notes on solvent men, &c. The exclusion of the evidence was, I apprehend, on the ground, that by the contract, solvency at the date of the endorsement was immaterial. The Court did not decide, that no proof could be adduced, to prove solvency, at the date of the return of *nulla bona* to a *fi. fa.* which had been issued to the sheriff of Lawrence county, on the judgment in favor of Crockett on the endorsed note. No such proof was offered with sufficient distinctness to be regarded; for the term " afterwards," though it may extend to any indefinite future period, yet on the principles of construction applicable to bills of exception, is not to be so understood; and it may well consist with total insolvency at the date of the sheriff's return, that *after the endorsement*, Harris was perfectly solvent. If, however, it was intended to be decided, by the Court, that the return of *nulla bona* in that judgment, was conclusive against Trotter, it was, to my mind clearly erroneous; for at most, all that a return of *nulla bona* can be evidence of, is no visible effects within

the county, of which the sheriff making the return, is the ministerial officer; and is perfectly consistent with the possession of ample estate, just beyond its boundary; which would be a sufficient defence, unless the words of the contract, "solvent men, in Lawrence county," mean not only that the men must be solvent, but that their property, and residence must both be, in that county: which I do not consider to be a fair interpretation of them. The Court, however, did decide, and the counsel for Crockett now insist, that solvent men, in the meaning of the contract, are such only as shall have effects to satisfy an execution, which shall issue upon a judgment in favor of Crockett, on the cash notes to be paid. This would clearly imply an obligation on Crockett to bring a suit on the note. But the doctrine is well settled, that without, an express contract, the holder of paper as a conditional payment of, or as collateral security to, a pre-existing debt, is not bound to sue upon it at all;[a] and if these notes were not transferred in [a] 1 Cranch 181. one or the other of those ways, he cannot sustain his action at all on the original consideration. It cannot be adopted as a proper construction of the contract sued on, that any suit was to be brought by Crockett on the notes to be transferred, before he could recover in an action for its breach in the particular of the solvency of the makers of those notes. Suppose that those notes were transferred without any knowledge by either party of the pecuniary condition of the makers, and that upon enquiry it were ascertained, that one or more of them, though never sued in their lives, were upon the parish as paupers at the time of the transfer, would it be necessary to sue in such case in order to recover of Trotter for a breach of his contract? I apprehend that it would not. Now, if

on the one hand, it can be alleged and proven, that the maker was insolvent, without any suit against him; as a necessary consequence his solvency can be established on the other hand, by the kind of proof here offered and refused. It is argued that the true construction of this contract is, that there is a warranty not only of present solvency, but a prospective warranty of continuing solvency, until by the due prosecution of the means afforded by the laws of the country, the fact of solvency, *vel non*, is in that manner ascertained. To sustain this construction, reference is made to the decisions of the Courts of Virginia, regulating the recovery by assignees against assignors, of such instruments as by the laws of that State are authorised to be assigned. It is true, that upon an indorsement in blank, or in the common form, the Courts in that State have said, that a recovery may be had, as for a consideration which has happened to fail, notwithstanding the use of the means of the law, as far as a *fi. fa.* returned *nulla bona*, to render it available. But even there a special indorsement would vary the implied rule of liability, and if indorsed so as to raise the implication, that the liability was to be more restricted, than the implied responsibility, the special understanding would control. But even if the word solvent, is construed to mean ability to pay according to law, I would maintain that all the means which the law supplies, must be exhausted, before insolvency could be affirmed. Now, a *fi. fa.* is not the final test : in this State, at least, it is not the ultimatum which is afforded. The law gives a *ca. sa.* to reach the secret treasures of the debtor, as a *fi. fa.* does, his property, subject to levy. A judicial insolvency then, I think, is only established fully, by this final process of execution. For the er-

ror in the Court below, in rejecting the testimony offered, the cause would have to be reversed, but as it must be remanded for a new trial, it is thought proper to consider the law, which from the proof exhibited in the bill of exceptions, will be most probably applicable to the state of facts that will again be established. The notes in this case, must, of necessity, have been endorsed over, either in absolute discharge of the original contract, or as a conditional payment of it; or as a collateral security to it: and the question as to the precise manner intended, is one, which from all the circumstances of the case, must be determined by the jury. If the transfer were intended as an absolute payment, then there can be no resort to the original note, nor to the original consideration of that note. The note to pay in cash notes, &c. had extinguished the open account; and the transfer, if in payment, had extinguished that note; leaving the only recourse of the party so accepting them, on the transferred notes, unless indeed, they be forged, or a fraud has been practised ; as by falsely representing the parties to the said securities to be solvent, when they were not. If the transfer were intended as a conditional payment, or as a collateral security, then the successful pursuit of the debtor on the original consideration, which in such case, is the only subsisting ground of action, will depend on the fact, whether or not, any *laches* has been committed with regard to the transferred security, whereby any party whose liability could have been retained, or secured to the party transferring the note, or bill, is lost. If such *laches* has occurred, it will operate to that extent as an an absolute payment.[a] And it would seem by the last decision of this Court, above cited, that in such case the insolvency of a party whose liability had

[a] 1 Wash. C. C. Rep 156 — 1st Porter's Rep. 1st ed. 260.

been omitted to be fixed, would not vary the case. For although insolvent, as far as legal coercion is concerned, yet a demand of the money might have resulted in its payment. I do not find the doctrine to be, that where a bill or note is transferred by endorsement, as conditional payment, or collateral security, and afterwards suit be brought on the original consideration, that successful resistance can be made to a recovery, by shewing that all the diligence has not been used, which would be necessary, to enable the indorsee of such transferred bill or note to recover against the indorser as such, if it had been received in absolute discharge of the original debt. The extent of the doctrine, I apprehend is, that the recourse of the person from whom the bill or note is received against any prior party must not be lost, nor such delay occur in giving notice to the person from whom it was received, of the refusal to pay, as in the estimation of the jury would be unreasonable. As to the return of a bill or note, which may have been transferred as a conditional payment, or collateral security, I do not consider that its return, or an offer to do so, is necessary, to authorise the institution of an action on the original demand.

A creditor may lawfully take and hold several securities for the same debt, and ought not to be compelled to yield up either, until the debt is paid.[a] It is true that a double satisfaction cannot be had; but on principle, it seems to me, that all collateral securities, honestly acquired, are to be allowed to be retained until their object is accomplished.

It is laid down in 1st *Cranch*, 181, that it is not necessary to return a note received as a conditional payment, prior to the institution of a suit on the original contract; for the reason, that it is not an extinguish-

a 2 Wheat. 390.

ment of that contract. The utmost that justice would require is, that the plaintiff should shew that he has not derived benefit from it.    If it has been transferred, so that in presumption of law, he has derived such benefit, by which means too, the defendant might be subjected to its payment, then unless it be regained, so that he have it in his power to return it to the defendant, he should not be permitted to recover.    In the case of a collateral security, I feel confident that the plaintiff ought not to be compelled to return it, until the debt is actually paid.    But, in regard to paper, transferred as conditional payment, though not necessary to be returned before commencement of suit, it would seem perfectly correct, that it should be delivered up, or at least satisfactorily accounted for, before the rendition of judgment.

This doctrine of diligence, on the part of one who accepts negotiable paper, as collateral security, or conditional payment, is not peculiar to this class of cases.    It is applicable alike, the diligence varying according to the nature of the thing, whether paper security, or property of any other kind, be received in the same way.

The necessary care and attention should be bestowed to preserve the value of whatever is thus voluntarily, and with a view to one's own interest, taken under his control.

If the diligence which is necessary to preserve its value be onerous or hazardous, its assumption may be declined altogether, or it may be regulated by express stipulation.

In the absence of any special contract, I think the purposes of justice can only be accomplished, and the decisions in former cases in this Court, and elsewhere, only reconcilable, by adopting the principles

above laid down, as it respects the mutual rights and liabilities of parties standing in the relation of transferors and transferees of notes, or bills, by endorsement or otherwise, as conditional payment, or collateral security, of an original demand or duty.

Let the case be reversed and remanded.