## THE SEMPLE & BIRGE MANUFACTURING COMPANY v. J. R. DETWILER.

1. COLLATERAL SECURITIES; *Collection; Due Diligence; Accounting.* Where a debtor delivers to his creditor promissory notes as collaterals, under an agreement that the creditor shall collect the amounts due thereon, and after deducting all expenses, apply the net proceeds to the payment of the debt, the creditor is under obligation to use due diligence in the collection of the collaterals; and when the creditor takes no active steps toward their collection, other than to demand of the parties thereto payment, and allows the collaterals to become barred by the statute of limitations in his hands, he does not use due diligence for their collection, and must account to the debtor for the loss thereof, if the collaterals were good and collectible when delivered to him.

2. UNCOLLECTED COLLATERALS, *When to be Surrendered to Debtor.* Where a debtor has delivered promissory notes to his creditor, under the agreement that the creditor shall collect the amounts due thereon, and after deducting all expenses, apply the net proceeds to the payment of the debt, and such creditor afterward gets judgment against his debtor for the remainder due on his claim, after applying the collections on the collaterals toward the payment of the debt, the judgment-debtor is entitled to receive the collaterals uncollected, upon the payment of the judgment and costs. Under a sufficient answer, setting forth such a state of facts established upon the trial, the court should not require the payment of the judgment and costs, in the absence of the collaterals uncollected, and compel the defendant to recover them in a subsequent proceeding. The surrender of the collaterals and the payment of the judgment ought to be contemporaneous.

*Error from Neosho District Court.*

ACTION brought by the *Semple & Birge Manufacturing Company* against *Detwiler*, on three promissory notes by him executed to the plaintiff. At the July Term, 1882, the company recovered against defendant a judgment, which it avers to be erroneous, and brings here for review. The defendant also files a cross-petition herein. All necessary facts, pleadings and proceedings are stated in the opinion.

*Hutchings & Denison*, for plaintiff in error:

The first question to be considered is that of negligence, and what degree of diligence is required on the part of the pledgee in order to release him from all obligation with reference to the pledge.

The rule is universal that a bailee *in pignus* is required to exert the diligence that a good business man would under the circumstances. (Wharton on Neg., § 672.)

It is also well settled that when the pawner of commercial paper seeks to charge the pawnee for notes which are lost, "he cannot obtain credit therefor in a suit upon the principal debt, unless he can show that the notes constituting the security had been or could have been collected." (*Dugan v. Sprague*, 2 Ind. 600; *Mills v. Gould*, 14 id. 278; *Kiser v. Ruddick*, 8 Blackf. 382.)

When the pledgor seeks to recover on the ground of negligence, he is required to make out his case the same as in an action brought by a principal against a collecting agent. He must show that he has been damaged by reason of the neglect of the pledgee. It certainly would be a queer rule of law that would permit a party to an action to recover without first showing that he had suffered some loss. Suppose the plaintiff was a collecting agent or attorney, and the defendant Detwiler had placed the notes in his hands for collection, and the defendant had failed and neglected to collect the same, and this action was brought to recover damages: the plaintiff

in that kind of an action might show that the makers of the notes had at one time, after the notes were placed in the hands of the agent or attorney, been solvent, but afterward became insolvent, and that by reason of the neglect of the collecting agent he suffered loss, and this might have been done before the notes were barred; but if he seeks to recover because the notes are barred by the statute, then he must show that *at the time* the notes became barred the makers were solvent, because if they were insolvent then he sustained no loss.

But while the defendant is charging us with negligence, let us see how his case stands, and whether or not he is entitled "to cast the first stone." The defendant was owing the plaintiff a large sum of money, and in order to get still further time he pledged these notes as collateral security. The transaction was for the accommodation of the defendant. If the defendant had not violated his contract with the plaintiff, he himself could have saved both these notes, provided they were collectible. The Goldsberg & Greyman note was barred October 1, 1881, three years and six months after the last note sued on in this action was due. The Long & Ellet note was barred September 1, 1880, two years and five months after the last note sued on herein was due. If defendant had complied with his contract and paid his own notes when the same became due, he would have had the collateral notes in his possession several years before they became barred by the statute. He now says, I have violated my part of the contract, I was guilty of negligence myself, but notwithstanding you must suffer the loss of the notes.

The Goldsberg & Greyman note was not barred when this action was commenced. The action was begun January 12, 1881; the note was barred October 1, 1881. Defendant could have prevented the statute from running by paying his note after suit was brought, but he neglected to do so; and the referee and the district court say that so far as this note is concerned, it was all right when suit was commenced, yet we will give the defendant the benefit of something which

has accrued to him since the action was brought, and after his answer was filed, and this without filing any supplemental pleadings.

The pleadings show that plaintiff was a non-resident of Kansas, and would have been required to give security for costs, and become liable for attorneys' fees without any prospect of collecting anything on the judgment when obtained. This certainly would be asking plaintiff to exercise extraordinary diligence, when the law requires only ordinary diligence.

In conclusion, we claim :

*First.* That there is no evidence in the record to warrant the findings of the referee. The record contains all of the evidence introduced relating to the matter.

*Second.* The findings show upon their face that the referee based his findings of negligence upon the fact that no action was brought on the notes mentioned in finding No. 9; that they were collectible *when delivered* to plaintiff, but fails to show that they could have been collected at any subsequent time.

*Third.* The third conclusion of law shows that the referee found that plaintiff "was guilty of negligence *in suffering said notes to outlaw in its hands, and that therefore* it is chargeable."  We say that the plaintiff is not *therefore* chargeable.

*Fourth.* To charge the plaintiff with the notes because they are barred by the statute of limitations, it must also be affirmatively made to appear that at the time the statute ran they were of some value.   There is no presumption that they could have been collected.   There is nothing in the answer that charges plaintiff with any negligence in permitting the statute to run against the notes.   No such issue was tendered. The statute did not run until long after this action was begun and the issues were made up.   The findings of the referee are not only wholly unsupported by the evidence, but are predicated upon matters that accrued long after the suit was brought.   The negligence charged against the plaintiff by the referee, is negligence that accrued, if at all, after

the suit was brought. This all appears upon the face of the findings, and was challenged by our exceptions to the conclusions of law stated by the referee. The case was referred to the referee to try the issues then made by the pleadings, not to import issues into the case that had no existence until after his appointment.

The referee had no power either to permit an amendment of the pleadings, or to disregard them.

*L. Stillwell*, for defendant in error:

The findings of fact and conclusions of law of the referee are clearly right. It is insisted by the plaintiff that the findings of the referee touching the solvency of the makers of the outlawed notes at the time said notes were turned over to plaintiff, are not sustained by the evidence. With reference to the examination of that matter in this court, it is settled that the findings of fact by a referee are equally conclusive with the findings of fact by a court, or the special verdict of a jury. (8 Kas. 397.) The findings of the referee are not to be set aside simply because the testimony preserved in the record might produce in the minds of the reviewing court a conclusion different from that reached by the referee. This principle applies with all the stronger force when the district court has approved the findings. (9 Kas. 97.)

What was the duty of the plaintiff upon receiving from the defendant the collaterals, as shown by the pleadings and the referee's report? The supreme court of Tennessee says that—

"It creates between the parties a relation of trust and confidence, imposing duties on the creditor. The assignor of collaterals parts with his control over them, and the assignee should be bound to use proper exertions to render them effectual for the purpose for which they were assigned. The principle is, that where a right of action or a judgment is transferred by a debtor to his creditor, to secure the debt, or as collateral security, ordinary diligence must be used to make it available, and if a loss occurs, by negligence, even passive negligence, which is unreasonable, and results in loss, it will

be a good defense to a suit on the original debt." (*Ward v. Morgan,* 5 Sneed, 82.)

On p. 83, same case, the court says:

"We hold it to be the most just and reasonable rule, that where a creditor receives by assignment or delivery from his debtor claims from third persons as collateral security for his debt, that he should be held liable for any such claims that may be lost by his neglect or the want of ordinary attention and vigilance on his part. The fortification of his debt thus obtained, and the trust reposed by his debtor, by intrusting him with control of his means of payment, make it proper and right that he should be held responsible for any loss that may result from his supineness or unreasonable neglect in making them available."

See also *Betterton v. Rooke,* 3 Lea, 215; *Hanna v. Holton,* 78 Pa. St. 334; *Muirhead v. Kirkpatrick,* 21 id. 237; 9 id. 31; *Beale v. The Bank,* 5 Watts, 529; *Hazard v. Wells,* 2 Abb. New Cas. 451; *Wakeman v. Gowdy,* 10 Bosw. 208; 3 Johns. Ch. 614; 3 Sandf. 179; *Trotter v. Crockett,* 2 Porter, 411; 10 Ala. 535; 26 id. 424; 12 Minn. 232, 246, 247; 4 Ind. 425; 65 Ga. 308; 16 W. Va. 557, 721; 24 La. An. 550; 43 Wis. 329; 34 Mich. 92; 14 Ohio St. 1; 1 Bland's Ch. 103; *Fennell v. McGowan,* 58 Miss. 261. See an exhaustive article on "The Law of Collateral Securities," in Am. Law Rev. for Oct. 1880, pp. 689, *et seq.;* also, *Miller v. Bank,* 34 Am. Dec., pp. 451, 452, and editor's note thereto.

It is the duty of a creditor holding collaterals as security on a debt to take "active" measures, (*Muirhead v. Kirkpatrick,* supra, p. 251,) and to sue if necessary. (*Wakeman v. Gowdy,* supra.) It will not do for him to simply fold his arms and say, "There is a lion without; I shall be slain in the streets." It is within the experience of every practicing lawyer, that a given claim may seem to be utterly worthless to-day, but by not suffering it to outlaw, but, on the contrary, by reducing it to judgment, and following it up persistently by executions at reasonable intervals, or by well-timed garnishment proceedings, the vigilant creditor will at last attain, and often most unexpectedly, the *finis et fructus* of his toil.

The observations of the supreme court of Michigan, in *Whitten v. Wright*, 34 Mich. 94, are practical and true, and most applicable to the condition of things in this country.

The supreme court of Alabama, (1 Porter, 262,) says: "The mere insolvency of such party [*i. e.*, the maker of the collaterals] does not dispense with every effort to collect the money from him."

But where the creditor, as in the case at bar, with supine negligence simply holds the collateral until the statute of limitations stalks in, then all legal remedies to "quicken the conscience" of the debtor into payment are gone forever. And there is no denying the soporific effect of the statute on the conscience of the average debtor. ". . . Not poppy, nor mandragora, nor all the drowsy syrups of the world," can ever so "medicine" and lull the delinquent debtor's mind to rest and "sweet sleep," as regards the payment of even the most sacred obligations.

The defendant, in his cross-petition, assigns as error the action of the court below in refusing to adopt and confirm the recommendation of the referee in the concluding portion of his fourth conclusion of law, its refusal to order that no execution issue on the judgment after defendant had tendered and offered to deposit in court the amount of plaintiff's judgment and costs, its refusal to render the judgment and make the orders specified in the journal entry submitted by defendant, and its refusing generally to grant the defendant any affirmative relief under the pleadings, the report, and the proceedings had in the cause.

The defendant was unquestionably entitled to his collaterals, on paying or offering to pay the amount of plaintiff's judgment. Plaintiff could not receive the money for its debt, and at the same time retain the security. The case of *Ocean Nat. Bank v. Fant*, 50 N. Y. 476, is clearly in point. (See also *Overlock v. Hills*, 8 Me. 313; 1 Bland's Ch. 107; *Lawrence v. Maxwell*, 53 N. Y. 19; 10 Johns. 471; 27 La. An. 110; 8 Barb. 408.)

The record shows that the plaintiff's attorneys, in addition

to the refusal to receive the money because of the aforesaid alleged condition, "stated a portion of said notes was lost and worthless, and could not be delivered." This was a mere subterfuge. How large a "portion" of said notes was "lost," or "worthless,"—one, or twenty? No claim that any of said notes were lost was made in the pleadings; so that claim rests on the unsworn statement of counsel. As regards any of the notes being worthless, the plaintiff and its counsel could not be the judges of that; and whether worthless or valuable, the defendant was entitled to them on offering to pay the principal debt. If a collateral note is worthless, the creditor cannot keep it, nor give it away; he must return it to the debtor. (*Wood v. Matthews*, 73 Mo. 481. See also 93 Ill. 458; 14 Ch. Legal News, 398; Pomeroy's Remedies, § 76; 5 Kas. 150; 8 id. 65; 14 Wis. 693; 7 N. Y. 486, 489; 1 Story's Eq. Jurisp. §§ 27, 28; *Wilson Sewing Machine Co. v. Rutledge*, Iowa Sup. Ct., 14 N. W. Rep., p. 92.)

*Hutchings & Denison*, for plaintiff in error, in reply:

Counsel for defendant in error cites many cases for the purpose of proving that "when a creditor receives, by assignment or delivery, from his debtor, claims from third persons as collateral security for his debt, that he should be held liable for any such claims that may be *lost* by his neglect, or the want of ordinary attention and vigilance on his part," and "that he should be held responsible for any *loss* that may result from his supineness or unreasonable neglect in making them available," a proposition which no one, so far as we know, disputes —the principle is too elementary.

The question however remains: What was defendant's loss, if any? And this is the real bone of contention in this case. Did Detwiler suffer any loss by reason of the neglect of plaintiff, and if so, what was it? Certainly he introduced no evidence tending to show that these notes were of any value after they came into the hands of plaintiff, while the plaintiff proved by its witnesses that the notes could not be collected.

*McLean & Perine v. Walker*, 10 Johns. 471, and *Lawrence*

*v. Maxwell,* 53 N. Y. 19, cited by counsel, hold that trover will lie for the conversion of the notes, in which action, of course, the value of the notes could be litigated; while the case of *Ocean National Bank v. Fant,* 50 N. Y. 476, makes an exception as to lost notes. The other cases cited by him all treat of the elementary principle above referred to.

The question presented, then, in this case is: Does the bare, naked fact that a note has become barred while in the hands of a pledgee, fix his liability without any proof of the value of the note, or that it was collectible at the time it became barred by the statute of limitations, after the pledgee has shown by competent testimony that he has used diligence in attempting to collect the same, and has done all in his power, except to reduce the same to judgment and cause execution to issue? Counsel for defendant in error might, with some degree of consistency, come into a court of equity and argue his case, if he could show that these notes became barred before the principal note of his client matured, and that there- fore, he was prevented from taking any steps in the matter; but this is not that kind of a case. One of the notes in controversy was barred three years and six months after the last note sued on in this action became due. The other be- came barred two years and five months after the last note sued on was due and payable, so that the defendant was not powerless to act. If he is here asking equity, he should be required to do equity himself. What was to prevent his paying his own notes when they became due? If he had paid them, he would then have had two or three years in which to collect these notes himself, provided always that they were collectible.

While it is true that this court will not set aside the find- ings of a referee simply because the testimony preserved in the record may produce, in the minds of the court, a conclu- sion different from that reached by the referee, yet where there is an entire failure of evidence to sustain the findings, the court will not hesitate to set the same aside.

A finding of facts should always be based upon evidence;

and where none is given tending to show an affirmative fact, it is contrary to law to find such fact against the party traversing it.   Thus when a referee finds a fact upon which no evidence was given upon the trial, the error is not one of fact, but of law, and may be reviewed in the appellate court. ( 3 Wait's Pr. 329 ; 40 N. Y. 476 ; 48 id. 365 ; 40 id. 106 ; 45 id. 524.)   All the evidence introduced by defendant as to the solvency of the makers of these notes related to a time when the notes sued on in this action had no existence, and not to the time when they became barred.   The report of the referee shows upon its face that he based his findings and conclusions on the naked fact that the plaintiff suffered them to become barred.   This position is not tenable. ( See authorities in first brief.)

The principal ground of error complained of by defendant in his cross-petition is, that the court erred in not going still farther and having an order entered upon the journal, which would prevent the plaintiff from collecting the small sum which the referee found in its favor.   To make an order, as recommended by the referee, staying the plaintiff's judgment until it produced the notes, would ( inasmuch as the notes are lost, and cannot be produced) be equivalent to conclusively charging plaintiff with the full face value of the notes and interest.   The plaintiff would be cut off from even showing that they were lost, without its fault, or that if lost by its fault, they were wholly worthless, or that they were worth less than their face.   If the referee had in terms, as a conclusion of law, charged the plaintiff with the face value of these notes, and interest, no doubt can be entertained that such conclusion of law would be erroneous, and would have been set aside as having no basis in the findings of fact.

The recommendation that the judgment be stayed until the notes are produced, is an indirect way of charging plaintiff with them.   There was no investigation upon the trial, there was no finding of fact by the referee, there is no statement or allegation in the pleadings upon which the plaintiff can be properly charged, either directly or indirectly, with the face

value of those notes, or upon which it can be deprived of its right to defend against any action brought to recover for their loss or conversion.

Again, if such an order had been made, and plaintiff had been unable to produce *any one* of said notes, although it could produce all the rest of them, it would have been charged with all of them.    And the measure of damages prescribed by such order, and by the referee in reference to the notes that were barred by the statute of limitations, was erroneous and unjust. The referee charged the plaintiff the full face value of the notes, and interest.    The expense of collecting the notes should have been deducted.    This was the contract, and this is the general rule of law in such cases.

It must be very apparent that the asking for this order was a mere scheme of the defendant to charge plaintiff, without giving it any opportunity to defend, with the face value of a lot of worthless notes that had been lost by reason of the delay of defendant in paying the principal debt.

The case of *Wilson Sewing Machine Co. v. Rutledge*, 14 N. W. Rep., p. 92, will not help the defendant out in this case, for the reason that in that case the referee found, as a matter of fact, the notes to be "still in the hands of the plaintiff." In this case all notes still in the hands of plaintiff were surrendered to the referee on the trial before him, and of course there could be no controversy about the value.

The opinion of the court was delivered by

HORTON, C. J.: This was an action brought by the Semple & Birge Manufacturing Company—a corporation organized under the laws of the state of Missouri—against J. R. Detwiler, to recover the sum of $1,770.97, with interest, alleged to be due on three promissory notes executed by the defendant to the plaintiff.    For the purpose of securing the indebtedness for which the notes were executed, the defendant had pledged certain other promissory notes as collateral security. Several of the notes thus pledged were collected through the agents of plaintiff, and the amounts thereof, after deducting

the cost of collection, were credited to defendant as payment upon the notes sued on. The referee appointed to hear and determine the issues in the case, reported, among other matters, that of the collaterals turned over by the defendant to the plaintiff, was a note executed by G. M. Goldsberg and J. M. Greyman, dated June 12, 1876, and due October 1, 1876, for $100, with 10 per cent. interest thereon from date; second, a note executed by Peter Long and J. B. Ellet, dated March 22, 1875, and due September 1, 1875, for $55.35, with 10 per cent. interest from date; that the notes were turned over by defendant to plaintiff, on August 2, 1877; that at said time the notes could have been collected by the exercise of ordinary diligence, but were not collected. No suit was brought on them, and more than five years have elapsed since each note fell due and since a cause of action accrued on each of them. No payments have been made by the makers of the notes on either of them, and the amount of interest on the notes from their dates respectively to November 2, 1881, at 10 per cent., is $90.60, making a total of principal and interest of $245.95. Upon these and other conclusions of fact the referee held that defendant was also entitled to credit for the amount of the notes held by the plaintiff until barred by the statute of limitations, and gave judgment that plaintiff was entitled to recover only $177.93, with 10 per cent. interest from November 21, 1881; the same to be paid by defendant on the surrender and delivery to him of the collaterals remaining in its hands, and the collaterals unaccounted for.

The principal controversy is over the findings and report of the referee concerning the collaterals which were uncollected, and at the time of trial barred by the statute of limitations. It is claimed on the part of the plaintiff that there is no evidence in the record to warrant the finding of the referee that plaintiff was guilty of negligence in suffering the notes in its possession to outlaw; that the evidence only shows the notes outlawed were collectible when delivered to plaintiff, but does not establish that they could have been collected

at any subsequent time; that before plaintiff can be charged with these notes, it must appear affirmatively that they were of some value at the time the statute ran against them; and finally, as the statute did not run until after the action was commenced, the negligence alleged is that only which accrued after the commencement of the suit, and therefore ought not to be considered.

These various objections to the findings and report of the referee must be overruled. Of course the plaintiff ought not to be charged with the collaterals barred by the statute, unless it were shown that they could have been collected. But as evidence was offered tending to prove that at the time these collaterals were turned over to the plaintiff they were good and collectible, sufficient evidence was introduced to sustain the finding that the plaintiff was chargeable with the full amount of the notes. If the makers of the notes were solvent at the time they were turned over to the plaintiff, a like state of things is supposed to continue until the contrary is shown. Even if it had appeared that the makers of the notes subsequent to the delivery of them to the plaintiff had become insolvent, nevertheless, if through plaintiff's negligence, by delay, or otherwise, the collaterals were not collected, it would be at fault. When the plaintiff accepted from defendant the collateral securities, it incurred the obligation to use due diligence in their collection, and to sue if necessary.

It appears from the findings, that it was the agreement between the plaintiff and the defendant, when the collaterals were delivered to plaintiff, it should collect them, and after deducting all expenses, the net proceeds thereof were to be credited upon the account evidenced by the notes sued on. Now the conduct of the plaintiff in holding two of the collaterals in its possession, or under its control, and taking no active steps to collect them other than merely demanding payment orally and in writing, and then allowing them to become barred by the statute of limitations, is, within the authorities, not using due diligence toward their collection. (*Ward v. Morgan*, 5 Sneed, 82; *Betterton v. Rooke*, 3 Lea,

215; *Hanna v. Holton*, 78 Pa. St. 334; *Hazard v. Wells*, 2 Abbott's New Cases, 451; *Trotter v. Crockett*, 2 Porter, 411; *Fennell v. McGowan*, 58 Miss. 261; *Miller v. Bank*, 34 Am. Dec. 451; *Wakeman v. Gowdy*, 10 Bosw. 208; *Muirhead v. Kirkpatrick*, 21 Pa. St. 237; *Whitten v. Wright*, 34 Mich. 94.) The plaintiff did not return the collaterals at the commencement of the action, but retained them in its possession long afterward, and until they were barred by the statute; therefore the fact that the statute did not run until after the action was commenced does not relieve plaintiff. The suggestion that as the Goldsberg & Greyman note was not barred by the statute until after the filing of the answer, it was error to charge the plaintiff with the amount thereof, is also without force.

The defendant has filed a cross-petition, alleging error to his prejudice on the part of the district court. The facts upon which this assignment of error is based are substantially these: After the court had rendered judgment in favor of the plaintiff, and against the defendant for the amount found due by the referee, together with all the costs in the case, the defendant tendered in court the judgment, interest and costs, and demanded of plaintiff that it surrender the uncollected collaterals remaining in its hands, and also the collaterals unaccounted for. The defendant further offered to deposit the amount so tendered with the clerk of the court, to be paid over to plaintiff when it surrendered to the clerk the said collaterals, and then asked the court that, in consideration of such tender, it should order that no execution issue. The plaintiff declined to accept the tender of defendant, because it was coupled with the demand for the surrender of all the collaterals theretofore delivered to plaintiff, and not collected or redelivered, and because plaintiff alleged a portion of the collaterals were worthless; that some were lost, and therefore could not be redelivered. Plaintiff stated it would accept the money produced in court if tendered unconditionally. Thereupon defendant asked: "Will you give

me my notes?" and the plaintiff answered by its attorney, "No, for the reasons stated." The court then declined to order that no execution issue, and to this ruling the defendant excepted.

The ruling of the court must be reversed. Defendant had the right to receive the collaterals when he paid the judgment and costs, and upon offering to pay the plaintiff the judgment and costs he had the legal right to insist upon the collaterals being redelivered to him as a condition of such payment. It would be unreasonable to require the defendant to pay the judgment and costs in the absence of his collaterals, which consisted of various promissory notes, and then trust to his legal remedies against the plaintiff to recover them in a subsequent proceeding. The answer of the defendant, the evidence produced upon the trial, and the report of the referee, gave the court ample authority to make the order requested, and it was unjust to the defendant not to do so. (*Bank v. Fant,* 50 N. Y. 476; *Overlock v. Hills,* 8 Me. 313; *Hoffman v. Johnson,* 1 Bland's Ch. 107; *Wood v. Matthews,* 73 Mo. 481; *Company v. Rutledge,* 14 N. W. Rep., p. 92.)

Plaintiff insists that the ruling of the court is correct, because the tender was not unconditional, and because the notes not redelivered had become lost and were worthless. There is nothing in the findings of the referee tending to show that the notes not surrendered by plaintiff have been lost or are worthless. On the other hand, the finding is, that the collaterals not produced have not been accounted for in any other way than that they were turned over by defendant to plaintiff, and by plaintiff sent to its agent, the Neosho county savings bank, for collection. If the notes so unaccounted for have been lost, it is the duty of the plaintiff to establish that fact; and further, to prove that such loss did not occur by its own negligence. It might have done this upon the hearing before the referee. Such an issue, however, cannot be determined upon the mere *ipse dixit* of the plaintiff or its attorneys. Even if the collaterals are worthless, the plain-

tiff has no right to keep them and demand payment of its judgment. The surrender of the notes and the payment of the judgment ought to be contemporaneous.

The judgment of the district court will be affirmed, with direction that no execution issue on the judgment after the defendant deposits with the clerk of the district court the full amount of plaintiff's judgment, with interest and costs. Upon the surrender to the court of all the said collaterals, plaintiff will be entitled to receive the amount of its judgment.

All the Justices concurring.