FARM INVESTMENT COMPANY v. WYOMING
COLLEGE AND NORMAL SCHOOL, ET AL.

WYOMING COLLEGE AND NORMAL SCHOOL v.
FARM INVESTMENT COMPANY, ET AL.

PLEDGE—COLLATERAL SECURITY—NEGOTIABLE PAPER AS COLLATERAL
SECURITY—LIABILITY OF CREDITOR—COLLATERAL NOTES BARRED BY
STATUTE OF LIMITATIONS—EXPENSE OF COLLECTION—RULE FOR
CHARGING CREDITOR—EVIDENCE—BURDEN OF PROOF—PRESUMPTION
FROM ADMISSION IN PLEADING—TAKING RENEWAL NOTES.

1. The facts considered and held to sustain a finding that col-
lateral notes had been delivered to the creditor, and were under
the latter's control, so as to charge him with the obligations
implied by law from the assignment and delivery of promissory
notes as collateral security.

2. Where collateral promissory notes are assigned to and title
thereto vested in the creditor, and it is sought by the pledgor
to charge him with negligence in their collection, the burden is
on the creditor to show that he was not to assume control of
the collaterals, or of their collection.

3. Where collateral promissory notes are assigned to and placed
in the hands of the creditor, it is immaterial in a suit to charge
the creditor with negligence that the agent selected to hold and
collect was suggested by the debtor, or agreed upon by both
parties, so long as the creditor had control of the collateral;
negligence of the agent not being involved.

4. In the absence of contract prescribing the rights and duties
of the parties, or furnishing a basis for their determination, a
creditor to whom are transferred and delivered, by his debtor,
negotiable promissory notes of third persons, as collateral se-
curity, is required to exercise ordinary diligence to preserve
the pecuniary value of the pledge.

5. He is required to resort to active measures to protect the
pledge, and prevent a loss occuring through the insolvency of
the parties liable for the payment of the collateral paper, but is
bound to exercise only reasonable and ordinary care.

6. If, in consequence of his gross negligence, he fails to collect
the collateral paper, when it might have been done, and the
pledgor is injured, and the value of the paper lost, the creditor

becomes chargeable with the face of the securities, as in payment and discharge, *pro tanto,* of the principal debt.

7. The damages resulting to the pledgor may be set up by way of counter-claim in an action on the principal debt.

8. In a suit to charge a creditor holding negotiable paper as collateral security with negligence in their collection, and resulting loss thereof to the pledgor's injury, the negligence and loss is held to have been sufficiently established, where the notes had become barred by the statute of limitations while in the creditor's possession and control, and by admission of the pleadings the notes were worth their face value at the time of delivery to the creditor, no evidence having been offered tending to show their value at any subsequent time.

9. When by admission of the pleadings negotiable promissory notes, held as collateral security, were worth their face value at the time of delivery to the creditor, and no evidence is offered tending to show their value at any subsequent period, in a suit to charge the creditor with negligence, a finding is justified that the value of the notes at maturity is that expressed on their face, including interest; the notes having already matured.

10. Collateral promissory notes having been good and worth their face value at time of delivery to the creditor, it is incumbent upon the latter, in order to avoid liability for having permitted the bar of the statute of limitations to occur, to show that his failure to prevent the bar of the statue had not resulted to the injury of the pledgor.

11. In case of negligence in allowing promissory notes held as collateral security to become barred by the statute of limitations, the creditor should be charged with the value of the notes as of the date when the bar became complete and not as of the date of their maturity; since mere delay is not sufficient to render the holder of collateral paper liable, if no loss follows as a consequence thereof.

12. Where the creditor holding promissory notes of a third person as collateral security surrenders the same to the maker and takes new notes payable to himself at a future period signed by the original maker and another without the knowledge or consent of the debtor, thus extending the time of payment by the taking of the new and the surrender of the old notes, the creditor is properly held chargeable with the value of the surrendered notes as against his debtor; but the credit to the debtor upon his obligation should be allowed as of the date of the surrender of the old notes, since as between the

debtor and creditor the transaction must be treated as collections of the collateral notes.

13. While the pledgee of collateral paper is entitled, on default in the payment of the principal debt, to enforce the same, and retain the collateral until payment, he is required to be ready, in an action on the debt, to produce the collateral securities, or account satisfactorily for their non-production.

14. Upon the non-production of collateral paper, and failing to account therefor, in an action on the principal debt, the creditor is chargeable with the face value of the same.

15. Where, in a suit upon the principal debt, defendant having counter-claimed for collateral notes of other parties assigned and delivered to the creditor as collateral security, it appeared that a number of them had been collected, but there was no accounting or proof of the time of payment or the amount paid, other than proof that the creditor had at various times received certain remittances from its attorney as proceeds of the notes; and it not appearing that the creditor was unable to show the time and amount of collection, and the notes having matured. *Held,* that a finding was justified that the creditor had not accounted for the notes, and that it was properly charged with their value at maturity.

16. The trial court having properly found upon the facts that the value of collateral notes at maturity was that expressed on their face, the creditor, as to certain notes placed in judgment, was properly held to have exercised ordinary diligence to enforce their collection, although executions had not been sued out upon the judgments, where the debtor offered no evidence to show that any of the notes so placed in judgment had become worthless, or that the creditor's delay had occasioned loss to the debtor.

17. A creditor holding negotiable promissory notes of third persons as collateral security is entitled, in his accounting with the debtor, to a deduction from the amount collected thereon of his reasonable and actual expenses in making the collections.

18. Where it does not appear that any actual expense was incurred by the creditor in collecting collateral notes, he is not entitled to a deduction of an attorney's fee for collecting the notes from their value, when such value at maturity is properly chargeable to the creditor in the absence of an accounting for the collected notes, since it cannot be presumed, in the absence of proof, that the creditor was put to the expense of an attorney's fee; and a pledgee is not authorized to col-

lect from his pledgor fees or commissions for his personal service in collecting collaterals, in the absence of an agreement to that effect.

19. Where collateral notes mature in advance of the maturity of the principal debt, the pledgee is authorized to hold the money paid upon the collateral notes prior to the maturity of the principal debt until the maturity of the latter obligation, applying the same toward the satisfaction of such obligation whenever it becomes due; and if, prior to the final maturity of the debt, any installment or interest becomes due, the pledgee, with proceeds of collaterals in his hands, may apply them in payment of such matured interest or installment.

20. Although the pledgee of collateral paper may have proceeds thereof in his hands, he is not required to apply them in reduction of the principal obligation until it shall become due.

21. In this case, held, in consideration of the facts, that the trial court improperly applied the proceeds or value of collateral notes chargeable to the creditor to the reduction of the principal debt prior to its maturity, and erroneously ignored the contract of the parties providing for semi-annual interest payments in computing the amount due to the creditor; and the judgment is modified to agree with the views expressed in the opinion.

[Decided April 15, 1902.]

Error to the District Court, Sheridan County, Hon. Joseph L. Stotts, Judge.

This was an action on a note and for the foreclosure of a trust deed securing the note, brought by the Farm Investment Company against the Wyoming College and Normal School. The defendant sought credit for several notes alleged to have been delivered to plaintiff as collateral security, some of which had been collected, others had been barred by the statute of limitations, and others were still in the possession of the plaintiff, uncollected. The issue arose out of these collateral notes, and the liability of the plaintiff in consequence of its alleged negligence in failing to collect and in failing to account. The trial court made a separate statement of conclusions of fact and law. These and the facts are set forth in the opinion. Both parties bring the case to this court alleging error.

*James W. McCreery* and *W. E. Mullen,* for the Farm Investment Company.

The errors in fact and in law involved in this record are so intimately connected, the matters of law depending so much upon the evidence introduced, that they can best, and perhaps only, be intelligently discussed together; and we can probably better present our views upon this case and the law applicable thereto by grouping our arguments under two or three general heads or propositions than by pursuing our inquiry in regard to each one of the findings separately.

The court found that all of the 201 notes assigned as collateral security were good and collectible at the maturity thereof respectively, and in effect charges amounts of said notes against the principal note at the time of the maturity, and ignoring the fact that most of the proceeds of the collateral notes collected had when received by plaintiff been applied to the payment on interest on the principal loan. This was wholly erroneous, for several reasons. It is affirmatively shown by both the documentary and oral testimony that the defendant itself, its trustees, agents and attorneys, retained the custody of the notes and assumed the collection thereof, the plaintiff coming in contact only with the matter when remittances were made to it. It was also shown without controversy or contradiction that all remittances received were immediately credited upon either the interest notes or the said principal note. It, therefore, follows that the collections made and remitted to plaintiff and by plaintiff faithfully accounted for, fully states the transaction and fully absolves the liability of plaintiff in the premises.

Moreover, in making the computations and charges the court adopted the theory that whenever a collateral note becomes due it should thereupon be charged at its full face value, including interest upon the principal note, disregarding not only the accumulation of interest on that note, but disregarding also the fact that the principal note was only payable five years after February 1, 1893, and not otherwise, and also being indifferent to the further fact as to whether

such collateral note then due was collected, or ever could be collected, and if so, how much might be collected thereon.

By this method of computation nine interest coupon notes, one for $168.88, and eight others for the sum of $157.50 each, which had become due semi-annually respectively, prior to the commencement of the suit, are wholly excluded from the computation, and if this method of computation be correct, they are entirely lost to the plaintiff, it is not only whittling down the principal of the $4,500, but at the same time refusing the payment of any interest whatsoever. This theory seems to have been adopted by the court because only the principal note and the last coupon note were sued upon, but since the first nine coupon notes had been paid by remittances from the proceeds of some of the collateral notes collected, suit could only be brought upon the paper which was in whole or in part unpaid. Indeed, the whole scheme and theory of computation, credits and charges as applied between these collateral notes and the loan, together with the interest thereon which they were given to secure, is so offensive and contrary to all the rules of both law and commercial arithmetic that it needs no further consideration.

The principal indebtedness or principal note, as these terms are employed by the authorities, of course, include interest accruing thereon, and where interest becomes due from time to time, interest so accruing is payable from the proceeds of short time notes collected. Security given for the principal extends to and covers interest accruing. This is not only the general rule, but the express stipulation of the contract of assignment.

When short time negotiable notes are pledged as collateral security to a long time note, the rule is that the proceeds of the short notes collected are to be set aside as a substitute for the note itself, and held until some payment upon the indebtedness for which the security was given comes due before it can be applied, unless the parties otherwise agree. (Farwell v. Importers' & Traders' National Bank, 90 N. Y. App., 483; Strong v. Nat. Mechanics' Banking Assn., 45 N. Y., 720; Colebrook on C. S., (2nd Ed.), Sec. 93.)

We, therefore, maintain that under the evidence introduced and the legal evidence offered, but refused to be received by the court, the findings to which we have objected in the motion for new trial, and to which we here object, are, for the most part, not only contrary to the evidence, but without evidence or any evidence to support them; that the conclusions of law are not sustained by any well considered authorities on this subject, and that the accounting and computations given by Mr. Baker stand unchallenged and constitute the true accounting by which the rights of this plaintiff should be determined.

The fundamental error of the court both in fact and law was in holding that the plaintiff had been negligent in not realizing the full face value on all of the collateral notes assigned and in renewal of certain of the notes, and in charging the plaintiff with the face or arbitrary value thereof without regard to whether collected or not.

It is conceded by the pleadings and cross-complaint, as well as being averred, that the 201 notes for $25 each were assigned not absolutely, but as collateral security for the loan made by plaintiff to the defendant. The loan was evidenced by the note for $4,500 reciting in the principal note that the loan was to draw interest at the rate of 7 per cent. per annum, from the time of its execution until maturity, as evidenced by coupon notes thereto attached, and to draw 18 per cent. per annum after maturity. This note and the coupons attached were secured by deed of trust, executed in due form, conveying certain lands and improvements thereon as the principal security for said loan. All this the defendant concedes in its fourth defense.

The character, scope and limitations by which the assignment of the collateral notes in question was invested appears further from the action taken by the board of directors of the defendant on the 8th day of February, 1893, and by the assignment made in pursuance of said resolution on the 11th day of February, 1893.

The assignment and guaranty provided for was thereafter made in apparent accordance with said resolution.

And in further apparent accordance with the above recited transactions, agreements and stipulations, the collateral notes were in fact left with the First National Bank of Sheridan, Wyoming, for collection, and were never in fact otherwise delivered to the plaintiff, and were never in its manual possession after the making of said assignment.

In any case and where the pledgee has full possession and control of the collateral security, the duty and obligation of the pledgee in the collection thereof is performed by the exercise of reasonable and ordinary care and diligence. More than this is not required of the pledgee. If he acts in good faith the pledgor cannot complain. Only in case of fraud or gross negligence on the part of the pledgee will he be held to stricter account. (Coleb. on Coll. Sec. (2nd Ed.), Sec. 114, and cases cited.)

The burden of proof of payment of the debt, whether by collection of the collateral security or otherwise, is cast upon the defendant. It is incumbent upon him both to allege and prove that defense if he desires to make it. (Coleb. on Coll. Sec. (2nd Ed.), Sec. 114, note k, and cases cited; Manuf. Co. v. Falvey, 20 Wis., 211.)

The pleading is insufficient to sustain proof of negligence and loss, but, aside from this, no proof was offered to sustain these averments save the bare fact that the collateral notes or some of them had not been collected or accounted for. There is no proof of the value of the notes or solvency of the makers; there is no proof of want of diligence, or the refusal to do or perform any act that might have been done to enforce the collection of the notes on the part of the plaintiff or on the part of the persons having the actual charge and custody of these collaterals. The only proof on the subject, and this is totally inadequate for the purpose of showing negligence on the part of plaintiff, is that certain persons, including four of the active trustees of defendant, who at the same time were guarantors *both of the collection and payment* of all the collateral notes, failed, neglected and refused to pay their own notes, either as makers or guarantors of the same.

In all such cases the burden of proof is on the pledgor, in this case the defendant, to establish the negligence of the pledgee and the loss occasioned thereby. (Coleb. on Coll. Sec. (2nd Ed.), Sec. 114, note g, and cases cited; Fuller v. Tomlinson, 58 Ia., 111; Murphy v. Bartsch (Idaho), 23 Pac., 82, and cases cited.)

The care with which plaintiff was charged in the collection of these collateral notes, even if it at any time had the custody of the notes, or the duty of their collection put upon it under the contract of assignment, is defined by the authorities as a reasonable or ordinary care and diligence. (Wilkinson v. Culver, 33 Fed. Rep., 708.)

Moreover, the pledgee of negotiable collateral securities, who has employed an agent or attorney in connection with the collection or realization thereof, is *not* liable, where he has exercised reasonable care and judgment in his selection, by reason of the misconduct or gross negligence of the person or persons employed. In such case and where reasonable care has been exercised in the selection of persons employed to perform the actual duties of collection, the liability, if any, in case of negligence of the agent, falls upon the persons so employed. It is conceded in the record, by the acts and authority of defendants themselves, that the selection of the persons employed was proper, and exercised with care and diligence. And, further, there is an entire lack in the evidence of anything reflecting in the slightest degree, either upon the honesty, business ability or a diligence in the performance of duty, upon the part of the persons and agents so employed. (Coleb. on Coll. Sec. (2nd Ed.), Sec. 116, and cases cited; Brandt on Suretyship (2nd Ed.), Secs. 446-7, and cases cited.)

And much more is the pledgee not liable for the non-collection of negotiable securities when the agent or agents selected, as in this case, are selected by the pledgors themselves.

By the action of the board of trustees stipulating that the notes should be and remain at the First National Bank, and by their personal guarantee to become responsible for the *pay-*

*ment* of said notes there was at least an implied undertaking on their part to look after the collection; and on the other hand by the contract of assignment no authority is conferred upon plaintiff to collect the notes. This implied undertaking is recognized and carried out by defendant and its officers, and agents looking after such collections, and procuring the employment of their own attorney for that purpose. (Fuller v. Tomlinson, *supra;* Wilkinson v. Culver, 33 Fed. Rep., 708; Bast v. Bank, 101 U. S., 93; Damon v. Waldteufel (Cal.), 33 Pac., 903.)

Everything that was done in reference to the collateral notes in question, whether in relation to the custody, collection, renewal, forbearance or suit for recovery, was done and was required to be done by the contract of guaranty, under the direction of the defendant, and plaintiff can in no way be made liable for what defendant did or failed to do in the premises. (Runals v. Harding, 83 Ill., 83; Bank v. Peabody, 20 Pa. St., 454; Jones on Pledges, 692 et seq.)

If any error was committed in allowing attorney fees, it is not an error of which the college can complain. The collateral notes as to the form, substance, number and amount were pleaded and set forth in their answer and cross-complaint in the court below. From this pleading it appears that the notes in question were 201 in number for $25 each, bearing interest at 8 per cent. and 10 per cent. additional for collection as attorney fees. The contract for attorney's fees for the collection of the collateral notes was thus made an element and issue in the case by plaintiffs in error themselves. Besides this, it was shown in the testimony that the notes were collected under the direction of the plaintiff in error here, defendant below, by their own attorney. Moreover, when the case is tried by the court without a jury, as in this case, all consistent findings within the issues necessary to support the judgment will be implied, such findings being necessarily involved in the judgment itself. (Thompson v. O'Neill, 41 Cal., 683; Seibel v. Bath, 5 Wyo., 409.)

The college complains that "the court erred in allowing

plaintiff interest on its loan from the date of the first mortgage note." We agree that in this the court committed an error in form; it was, however, an error that was not prejudicial in any manner to the college; on the contrary, was beneficial to it, in that the court employed a wrong system of accounting between collateral notes and the principal loan. Under the proper rule of accounting in such cases, the proceeds of collateral notes could only be applied to the payment of interest as it became due, reserving and setting aside the surplus of such proceeds, if any, to be applied upon the payment of the principal note, at its maturity, and not before. (Colebrook on C. S. (2nd Ed.), Sec. 93; Farwell v. Importers, &c., 90 N. Y., 483; Strong v. Nat. Bank, 45 N. Y., 720.)

*E. E. Enterline* and *M. B. Camplin,* for Wyoming College and Normal School.

It is alleged in the first paragraph of the fourth defense and counter-claim of the defendant college's amended answer as follows: "First, that at the time of the making and delivery to said palintiff of the notes and mortgage referred to and described in its said petition, and as a part of the said transaction and as a part of the consideration for the said loan to the defendant by plaintiff, and as a part of the security for said loan, this answering defendant being at that time the legal owner and holder thereof, duly assigned, transferred and delivered to said plaintiff the following described promissory notes, said notes having been made at Big Horn, Wyoming, dated as hereinafter stated, 201 in number, each drawn for the principal sum of $25, amounting to the aggregate sum of $5,025 and of the aggregate value of $5,025, payable to the order of this answering defendant on or before the respective dates hereinafter mentioned, drawing interest at the rate of 8 per cent. per annum, providing for 10 per cent. attorney's fees, signed, executed and delivered by the respective parties hereinafter stated, being more particularly numbered and described as follows, to-wit:" (Here follows description of notes.)

To the above portion of the defendant college's amended answer the plaintiff replied as follows: "2. That it admits all of paragraph one of the fourth defense and counter-claim of said answer, except the allegations that the said collateral notes were delivered to plaintiff, which allegation is denied."

2. As the plaintiff admitted that the notes were worth the sum of $5,025, it admitted that the makers were solvent at the time of assignment, and that they were good and collectible. (Semple & B. Mfg. Co. v. Detweiler, 30 Kan., 386.) And the makers being solvent at the time the notes were assigned to plaintiff, a like state of things is supposed to continue until the contrary is shown. (1 Greenleaf on Ev., Sec. 41; Semple & B. Mfg. Co. v. Detweiler, *supra*.)

Counsel for the investment company complain because the court allowed it interest from the date of the principal note up until the various times when it was charged with various sums found chargeable on the collateral notes. We also complain, but with good reason. No interest was pleaded or prayed for from any specific date. It claimed to be the owner of the principal note and one coupon, and in no way accounted in the pleadings for the remaining nine. It showed no disposition to be fair and plead the credits received in its petition.

As the notes were instruments for the unconditional payment of money, the plaintiff should have alleged the sum due, and which it claimed with interest, and necessarily from what date interest was claimed. (Rev. Stat., Sec. 3560; 1 Kinkead on Code Pleading, Sec. 310; 1 Bates on Code Pleading, 305.)

As the plaintiff sought only to recover interest—if at all—from the maturity of the two notes, the allowance of interest from the date of the note was error prejudicial to defendant college, but not to plaintiff. The interest allowed was clearly without the issues.

The defendant college was charged with 10 per cent. attorney's fees on the amount of the 104 notes collected by plaintiff. An examination of the pleadings will show that

the plaintiff did not allege that it expended any sum whatever for the collection of the notes. Nor did the plaintiff at any time claim that it had expended any moneys or was to any expense in the collection of the notes. And the collateral notes provided for the payment of 10 per cent. attorney's fees in addition to the principal sums and interest. The total sum charged to defendant college amounted to $309.64, and was deducted from the credits to which the court found it entitled. There was no contract pleaded that permitted the plaintiff to charge defendant with attorney's fees for the collection of the collateral. The allowance of attorney's fees under the circumstances was prejudicial error to defendant. (Tibbetts Imp. Co. v. Carey (Tex. App.), 45 S. W., 120; Bank v. Sproat, 55 Minn., 14.)

It is well settled by authority that the findings of the court must support the judgment rendered, and in order that the findings may thus support the judgment, the facts found should be the ultimate facts in issue. (8 Ency. of Pl. & Pr., 943, and cases cited; Bank v. Farwell, 56 Fed., 510; Seibel v. Bath, 5 Wyo., 409.)

When special findings are made by the court, all the essential facts necessary to a recovery must be stated therein before judgment can be rendered for the party having the burden of the issue. Findings of fact on issues not made in the pleadings cannot be considered for the purpose of supporting the judgment. (8 Ency. of Pl. & Pr., 945, and cases cited; Mitchell v. Brawley (Ind.), 39 N. E., 497; Bruner v. Brown (Ind.), 38 N. E., 316; Fisk v. Casey (Cal.), 36 Pac., 668; Foster v. Devinney, 28 Neb., 416; Traverso v. Tate, 82 Cal., 170; Leach v. Church, 10 O. St., 148; Geerston v. Burrack, 2 Idaho, 1066.)

In finding and allowing plaintiff attorney's fees for collecting the 104 collateral notes, the court decided a matter not in issue and a matter which it had no power to decide. (1 Freeman on Judgments, Sec. 120c; 11 Ency. of Pl. & Pr., 868, and cases cited; Bachman v. Sepulveda, 39 Cal., 668; Reynolds v. Stockton, 11 Sup. Ct., 773.)

All of the collateral notes should be charged to the plaintiff. It is admitted in the pleadings that the collateral notes. were good and valuable, and the court found that each and every collateral note was of the value expressed on its face, including interest, and was good and collectible at the maturity of each thereof.

A portion of the collateral notes were reduced to judgments by plaintiff, the value thereof at maturity having been found by the court to be $807.45.

The court also found that the plaintiff failed and neglected to collect the said notes at maturity other than reducing the same to judgments—the date of the judgments being in November, 1896—and the court finding that transcripts of the judgments were filed in the office of the Clerk of the District Court during the same month. The court also found that no executions had ever been issued on the said judgments. As a conclusion of law, the court found that in reducing the said notes to judgments the plaintiff exercised ordinary diligence and should not be charged with said notes. The conclusion of law is not warranted upon the facts found. The notes were reduced to judgments a year after the last series had matured. The plaintiff should have caused executions to issue—in fact, the notes having been good and collectible at maturity, it should have then collected them.

As a conclusion of law, the court found that the notes maturing on November 1, 1893 and 1894, and still in possession of plaintiff, were barred by the statute of limitations, and that the plaintiff was guilty of negligence in failing to enforce collection of the same. And the said notes were charged to plaintiff. Having been pledged for a valid debt, the plaintiff should have exercised due diligence in their collection, and it should have instituted suits to enforce collection. As the notes were good and collectible at maturity, and as the statute of limitations had run at the time of trial, the notes became worthless, and the plaintiff was guilty of negligence, and was very properly held chargeable for their value at maturity. (2 Brandt on Sur. and Guar., Secs. 440-

445; Colebrooke on Coll. Sec., Secs. 87, 90, 91, 114; 18 Ency. of Law (1st Ed), 643, 682, and cases cited; Bank of Fort Dodge v. O'Connell, 84 Ia., 377; Semple & B. Mfg. Co. v. Detweiler, 30 Kan., 386; Bank v. Thomp. & S. Co., 71 Fed., 11; Hawley Bros. Hard. Co. v. Brownstone, 123 Cal., 643; Manseur-Tibbetts Imp. Co. v. Carey, 45 S. W., 120; Rumsey v. Laidley, 34 W. Va., 721; Whitteker v. Charleston Gas Co., 16 W. Va., 721; Montague v. Stetts, 37 S. C., 200; Mueller v. Nichols, 50 Ill. Ap., 663; Lamberton v. Windom, 12 Minn., 232; Griggs v. Day, 32 Am. St., 718, note.)

If a pledgee without the consent of the pledgor renews or extends time on note pledged as collateral, he must account to pledgor as if he had collected it in full. (Haas v. Bank of Commerce, 41 Neb., 754.)

In the absence of agreement, and the court did not find any, the proceeds of collateral are held until maturity of original debt and then applied. The surplus, if any, to be paid over to debtor. (Colebrooke on Coll. Sec., Secs. 93, 87; 18 Ency. of Law (1st Ed.), 689.) And worthless collateral must be returned to debtor, pledgor. (Colebrooke on Coll. Sec., Sec. 94.)

In view of the findings of fact which are properly based on the pleadings—we refer to those only that are—we contend that judgment should go in favor of the defendant college, in accordance with the following statement: That plaintiff should be charged with the total value of the collaterals at maturity, namely, the sum of $5,961.69; that defendant college should be charged with the principal sum of the first mortgage note, namely, $4,500, and also with the coupon interest note, principal sum, $157.50—in all with the total sum of $4,657.50; that the defendant college should have judgment against the plaintiff, on its counter-claim, for the sum of $1,304.19—being the difference in favor of defendant college—with interest on said last sum from February 1, 1898, at the legal rate, to the date when judgment is entered.

POTTER, CHIEF JUSTICE.

The judgment to be reviewed in these cases was rendered in an action brought by the Farm Investment Company against the Wyoming College and Normal School and Wilson Peak, acting Sheriff of Sheridan County. The sheriff was not a beneficially interested party. The plaintiff investment company and the defendant college each assail the judgment on error. The plaintiff presented to the trial court its motion for new trial, which was overruled, and secured a bill of exceptions. No motion for a new trial was filed by defendant, but the errors it assigns are based upon one finding of fact as not supported by the pleadings, and upon certain of the conclusions of law as not sustained by the findings of fact. The District Court, at the request of the parties, had made special findings of fact and conclusions of law. The action was instituted to recover an amount claimed to be due upon two promissory notes, one of them being an interest note, and for the foreclosure of a trust deed given to secure their payment. The sheriff was the successor of the trustee named in such deed, and was, therefore, made a party to the suit.

On the 18th day of January, 1893, the defendant college made, executed and delivered to the Farm Investment Company, which, for convenience, will herein be referred to as the plaintiff, its first mortgage note in the sum of forty-five hundred dollars ($4,500), to become due February 1, 1898, and bearing interest from date at the rate of seven per cent. per annum, payable semi-annually, according to the tenor of ten interest notes, one being for the sum of $168.88 and nine for the sum of $157.50, each bearing even date with said principal note, and attached thereto. The first interest note was to mature August 1, 1893, and the others on the first day of each succeeding February and August until the last one to mature should become due, viz., February 1, 1898. By the terms of the notes, each was to draw interest at the rate of eighteen per cent. per annum after maturity. The petition alleged the execution of the notes, and the terms

thereof, substantially as above recited; and the answer admitted the execution of the principal note and interest notes, as well as the deed of trust securing their payment.

For a first defense, the answer admitted the execution of the notes and trust deed and denied every other allegation of the petition. The matters set forth in the second defense are eliminated from the case as it comes to this court. The third defense was an allegation of payment; and upon that allegation and the averments of the fourth defense the controversy mainly arises.

The fourth defense charged that, as a part of the transaction, and at the time the notes and trust deed were made and delivered, and as collateral security for the notes, the defendant college assigned, transferred and delivered to plaintiff two hundred and one promissory notes, payable to the order of said defendant, each for the sum of twenty-five dollars, amounting in the aggregate to five thousand and twenty-five dollars, and interest at the rate of eight per cent. per annum from date, and providing for ten per cent. attorney's fees. The date, maker and time of maturity of each note are then set out in detail in the shape of a list or schedule. By that list it appears that the majority of the notes were executed in 1892, and a few bore a date in 1893. Some of the notes were due and payable on or before November 1, 1893, some on or before November 1, 1894, some on or before November 1, 1895, and one at least January 1, 1895, and another January 1, 1896. In the testimony these notes are referred to as scholarship notes. As to these collateral notes, the answer averred that the plaintiff negligently failed to collect a large number thereof and negligently allowed a large number to become barred by the statute of limitations and to become wholly worthless and lost. It alleged that, owing to the want of diligence of the plaintiff in forcing collections and payment of the said collateral notes, the same had become wholly lost and worthless to the damage of the defendant college in the sum of five thousand dollars. It was further alleged that plaintiff had not accounted for the notes

collected, and the defendant prayed for an accounting as to the notes paid, the production of those remaining unpaid, and a judgment in its favor for the damages sustained by reason of plaintiff's alleged negligence in the said sum of five thousand dollars, as well as the cancellation of the notes and mortgage executed by defendant to plaintiff.

The reply admitted the assignment of the collateral notes, but denied that they had been delivered to the plaintiff, and charged that the notes at all times remained under the control of the defendant college, and that all proceedings for their collection were under the direction and supervision of the defendant. That charge was made more specific by an averment that at the time of the assignment of the notes the college reserved the right to have them placed in the custody of the First National Bank of Sheridan for collection, and that they were so placed under an agreement that all proceeds derived from collections thereof should be paid to the plaintiff for credit upon the mortgage loan and interest; and the reply alleged that plaintiff had never had the custody, control or supervision of the collection or authority to enforce payment of any of the notes. It was further specifically alleged that collections were made by agents of the defendant and of the proceeds thereof, $2,632.71 in the aggregate, had been remitted to plaintiff by the bank and an attorney engaged to collect the notes for the defendant, and had been credited upon the loan and accrued interest. The dates and amounts of the various remittances are given. Plaintiff also averred that it had been advised by defendant repeatedly that every reasonable effort was being made to collect the notes; that some of them had been put in judgment, and that a large portion proved to be uncollectible by reason of the insolvency, death or removal of the respective makers thereof. It was also alleged that plaintiff had not been advised of the sums collected upon any particular note, nor what notes had been paid, nor which ones were uncollectible or barred, and that it could not account therefor. Negligence of the plaintiff in the matter of the collection was denied.

It should be stated that the reply admitted the allegation of the answer that at the time of the assignment the aggregate value of the collateral notes was $5,025. The allegation of payment contained in the third defense of the answer was denied.

On the trial plaintiff's case in chief was confined to proof of its incorporation and right to do business in this State, and the introduction of the two notes sued on and the trust deed.

Thereupon, it appears that the defendant demanded of plaintiff the written assignment of the collateral notes and guaranty, and the notes uncollected and the renewal notes. The demand was complied with, and the defendant offered the assignment of the notes as collateral, referred to in its fourth defense, and also a list furnished by the plaintiff of the uncollected notes and renewal notes in its possession, and they were admitted in evidence. The bill of exception states that the list was to be compared with the notes, and later that such comparison occurred upon the production of the notes, and it was admitted that the list contained a full, true and correct list of the uncollected collateral and renewal notes in plaintiff's possession. The defendant thus assumed the affirmative of the issue presented in its third and fourth defenses, and very properly so. The remainder of the evidence, with certain exceptions shortly to be stated, both on the part of the defendant and plaintiff in rebuttal, was directed toward a disclosure of the facts connected with the assignment and delivery of the collateral notes, and the steps thereafter taken for their collection. The purpose and effect of the evidence on behalf of the defendant was to show that after the assignment the notes passed under the dominion of the plaintiff, whereby it became charged with the duty of collecting them; while, on the other hand, the plaintiff endeavored to establish that complete control over them and supervision of their collection was retained by the defendant college. The exceptions in the evidence not having the object above mentioned, was a showing on the part of plaintiff, by the testimony of its secretary, of the amount it had received

as proceeds of the collateral notes, and the introduction of transcripts of several judgments that had been obtained upon some of them.

That the case as finally submitted to the District Court for its findings and judgment may be clearly understood, it should be stated that the plaintiff did not show nor offer to show what notes had been collected, the respective amounts collected upon them, nor the time or times when any of them were collected. It continued to rely upon the theory that defendant had assumed control of the notes and the burden of their collection; and that its whole duty of accounting was satisfied by a showing of the amounts received from time to time.

On the other hand, the defendant did not offer any proof of negligence on the part of the plaintiff in the collection of the notes, beyond the fact appearing by the notes themselves, that they had matured, and some of them had become barred by the statute of limitations, and that plaintiff had taken notes, payable to itself at a future date, in place of some of the original collateral notes which had been surrendered, or, at least, were not produced with the uncollected notes. Neither did the defendant prove or attempt to prove that any of the makers of the uncollected notes had become insolvent, or that the notes themselves had become uncollectible, for any reason, except that, as above stated, it appeared that action upon some of the notes had become barred. The above statement, as to a showing of negligence, should be modified as to the judgments to this extent, that it appeared that the judgments had been recovered in the name of the plaintiff, and no execution had been issued upon them.

In relation to the matters in controversy, the court found as follows: That the collateral notes had been delivered to the plaintiff, and that they were, at maturity, of the value expressed on the face thereof, including interest from their respective dates, and were, at maturity, good and collectible; that at various times after receiving them the plaintiff, through its agent, the First National Bank, and its attorney,

E. E. Lonabaugh, collected one hundred and four of the notes, setting out the date, maker and maturity of the collected notes; that certain of the notes remaining uncollected and in the possession of plaintiff, thirty-eight in number, maturing during the years 1893 or 1894, had become barred by the statute of limitations; and that the plaintiff had not used ordinary diligence to enforce their collection; and they were good and collectible at maturity and of the value expressed on their face, inclusive of interest; that twelve of the notes had been surrendered to the respective makers, and new notes, payable to the plaintiff, had been taken in renewal thereof, without the knowledge or consent of defendant; that certain of the uncollected notes had been placed in judgment by suits instituted by plaintiff, but otherwise plaintiff had neglected to collect them, and had not caused any execution to be issued upon any of such judgments; that certain other notes remained uncollected in the possession of plaintiff, and were at the time of trial of the value expressed on their face, with interest from their respective dates; that plaintiff had not accounted to defendant for the notes it had collected; that a reasonable attorney fee for collecting such notes was ten per cent. of the sum collected; and the court treated the value of the notes at maturity as the sum collected.

Upon the findings of fact, above summarized, so far as they are deemed to be material to the questions in controversy, the court announced its conclusions of law. The plaintiff was held guilty of negligence in failing to enforce collection at maturity of the collateral notes that had become barred by the statute of limitations, and were charged with the value of those notes as of the dates of their maturity, respectively. It was also charged, at the date of maturity, with the notes for which renewal notes had been taken, it being held that such notes should be considered as paid at maturity. It was further concluded as matter of law that plaintiff should be charged with the value at maturity of the notes it had collected, less ten per cent. deducted as a reasonable attorney fee for their collection. The plaintiff was held not to be charge-

able with the notes placed in judgment, nor with the uncollected notes remaining in its possesion and not barred.

In arriving at the amount due after allowing the credits above mentioned, the court computed interest upon the first mortgage note at seven per cent. per annum from its date until November 1, 1893, and deducted the credits to which it was found defendant was then entitled. Interest was computed on the balance until November 1, 1894, and the credits of that date deducted. That plan was followed until the date of maturity of the principal note, viz., February 1, 1898, from which date interest was computed upon the amount found to remain unpaid on that date until the date of judgment at eighteen per cent. per annum; and upon the computation so made the sum of $1,432.67 was found to be due the plaintiff. Judgment was rendered accordingly, and the trust deed was decreed to be foreclosed by a sale of the premises therein described. It was ordered that, upon the payment or satisfaction of the judgment, the plaintiff should deliver to the defendant the collateral notes remaining in its possession, action upon which had not become barred at the date of judgment, and assign to defendant the judgments theretofore obtained upon certain of the original collateral notes.

To all the findings of fact and conclusions of law imputing negligence to the plaintiff, and charging it with any of the collateral notes, the plaintiff excepted; and it excepted also to the several paragraphs of the findings of fact and conclusions of law embracing a computation or statement of the charges or credits and the amount found to remain due. The defendant excepted to the finding of fact as to a reasonable attorney fee for the collection of the collateral notes, and to the findings relating to the amount ultimately found to be due the plaintiff. It also excepted to the conclusions of law deducting an attorney fee from the value of the collected notes, and to the decision that ordinary diligence had been exercised in the collection of the notes reduced to judgment, and that plaintiff should not be charged therewith, as well as to the conclusion that defendant was not chargeable with

the value of the uncollected notes not barred still in its possession.

The errors assigned by the respective parties are based fundamentally upon these exceptions. The Farm Investment Company maintains that the findings and conclusions are not sustained by the evidence, and are contrary to law. The college contends that the finding as to attorney fees is outside the issues in the case as made by the pleadings, and that the conclusions of law in respect thereto and to the notes reduced to judgment are not supported by the findings of fact.

The first or primary question arises upon the findings that the collateral notes were delivered to the plaintiff, and that the collections were made by the plaintiff through its agent and attorney; and holding the plaintiff responsible as a holder of collateral promissory notes for negligence, or failure to exercise ordinary diligence in enforcing the collection thereof.

The written assignment of the notes contains no agreement respecting their collection, or their disposition, temporary or otherwise. That instrument, after the preamble reciting the facts of the loan, and that it was made in consideration of the assignment of the notes and the guaranty of the payment of such notes by the individual members of the college board of trustees, as collateral security to the said loan, purports to assign, sell, transfer and convey to the plaintiff company the notes which are therein generally described, as well as specifically set out by a statement of the date, maturity and maker, respectively. Appended to the instrument appears the written guaranty of the individual trustees. The evidence clearly shows, we think, that the assignment and the notes were delivered to the plaintiff. Mr. A. S. Burrows, who was cashier of the First National Bank of Sheridan, represented the plaintiff company in negotiating the loan and completing it. Upon the execution of the papers they were turned over to Mr. Burrows for the plaintiff, and he delivered the money to the treasurer of the defendant college. As to the fact that the collateral notes

were then placed with the bank for collection, there seems to be no conflict. In explanation of that circumstance, and the agreement, if any, respecting it, the evidence is conflicting. Mr. Burrows states that it was done at the request of the college trustees and by direction of the plaintiff company; and he testifies that he knew of no agreement being entered into in relation to it. Mr. Baker, the secretary of the company, testified that plaintiff had not taken possession of the notes, nor assumed control of them, but that it was originally agreed that the college should retain direction and control of the collection of the notes, and for that purpose they were turned over to the bank, as the plaintiff was advised, as the agent of the college authorities, and that credit was to be given only for the proceeds when actually received.

Mr. Wagner and Mr. Jackson, two of the college trustees, denied positively that any such agreement was made, and testified that the college was not to retain control or direction of the notes or their collection, and that such control was not, in fact, retained. But Mr. Jackson, at least, admitted that there was an agreement or arrangement that the notes were to be placed with the bank for collection. The effect of the testimony on the part of the defendant is that the college authorities suggested that it would be convenient to the makers of the notes if they were left at Sheridan for collection, and that plaintiff agreed or directed that they be turned over to the bank. A resolution of the college trustees preliminary to the loan, authorizing the execution of the papers and assignment of the notes as collateral security, embraced a statement that the notes were to be and remain with the First National Bank of Sheridan. Defendant introduced from the files of the court parts of a petition in a suit brought by plaintiff against the individual college trustees, in which it was alleged that the collateral notes had been assigned to plaintiff, and that, "upon the direction and request of the said guarantors (the trustees), the plaintiff thereupon left all of said collateral notes in the

hands of A. S. Burrows, cashier of the First National Bank of Sheridan, Wyoming, for collection."

It appears that two of the trustees had occasional interviews with the bank's cashier about the matter of collections, and at times urged that more diligence be used. It seems also that before the bank placed the notes in the hands of an attorney, one or more of the trustees were consulted; such consultation occurring probably at one of the interviews when the trustee or trustees were inquiring as to the progress being made. But such conduct is explained upon the very reasonable ground that the trustees were merely obtaining information and insisting upon the collection of the notes; and the same may be said about their subsequent conversations with Mr. Lonabaugh. The trustees had every reason for anxiety about the diligence that was being employed in enforcing collections. They not only represented the college, which was interested in having the collateral collected, so as to be ready to meet its obligation to plaintiff, but they had personally guaranteed the collateral. We cannot agree with the theory that their conduct in urging collections tends strongly to show that the college retained control of the notes. It might have so tended, possibly, under other conditions or a different state of facts.

Mr. Lonabaugh, called as a witness for plaintiff, seems not to have had a distinct recollection of the circumstances attending the receipt of the notes by him for collection. He cannot say that he was employed by the plaintiff, but he thinks that one Anderson had first engaged his services. It does not appear that Anderson was connected with the defendant college, but rather that he was associated with an institution bearing another name. Nor does it appear that Anderson was at all interested in these collateral notes. But Lonabaugh testified that he reported to the plaintiff, and remitted the proceeds of collections to it, and that he did not report to the defendant. Having some other claims in his hands for collection in which some at least of the

trustees of defendant seem to have been concerned, he is unable apparently to relate with any certainty of recollection what occurred between the trustees and himself in relation to the particular notes in question, except that they talked with him at times about them. The notes were, by the bank, first turned over to Mr. Hoop, another attorney, and Mr. Burrows states that they were receipted for by Hoop to the Farm Investment Company, and later Lonabaugh received them from Hoop.

Upon this conflicting evidence the learned District Court found, in effect, that the plaintiff had control of the notes. We might well rest upon the customary rule, and refuse to review a finding thus founded upon a conflict in the testimony. But we think the court was amply justified in its conclusion. The fair preponderance of the evidence, in our opinion, sustains the finding. There was a straight assignment to plaintiff of the notes. The title thereto was in their name, and they had, in addition, the personal guaranty of the trustees. The notes were delivered to plaintiff's agent, who acted for it in negotiating the loan. Having thus taken the title to the collaterals, the burden was upon the plaintiff to show that it was not to assume control of them or of their collection. (Lyon v. Huntingdon Bank, 12 S. & R., 61.) We are satisfied that there was some kind of an understanding that the notes would be left with the bank for collection, and we think the evidence fairly shows that they were to be so deposited by the plaintiff, rather than by the defendant. In view, however, of the denial by the trustees of the agreement testified to by Mr. Baker, we do not think there is sufficient in the evidence to show that the defendant reserved or retained any control of the notes or supervision over their collection.

This condition of affairs is not like that in the case of Bank of U. S. v. Peabody, 20 Pa. St., 454, cited by counsel for plaintiff. There the collateral was deposited with a firm in London, to be held by them in trust as security for the holders of certain notes issued by the party depositing the

collateral. That case was distinguished from one where collaterals are placed in the hands of the creditor himself.

In the case at bar the collaterals were placed in the hands of the creditor. It matters not that the agent they selected to hold and collect was suggested by the debtor or agreed upon by both parties, so long as the creditor had control of the collateral. For aught that appears outside of Mr. Baker's version of the affair, the plaintiff could have taken the collaterals from the bank at any time. It may be that, had any question arisen as to the negligence of the bank, the defendant would not be in a position to have complained that plaintiff had not selected a proper agent, in view of its assent to the selection of the bank; but, as will appear further on, a question of that nature is not in the case.

The defendant parted with all its right of control over the collaterals, and the plaintiff was bound to employ ordinary diligence in their collection.

The findings of the court negative the existence of any express agreement defining the obligation of the plaintiff in respect to the collateral. Its obligations, therefore, were such as the law implies from the assignment and delivery of the promissory notes as collateral security. In the absence of contract prescribing the rights and duties of the parties, or furnishing a basis for their determination, the principle is well settled that a creditor to whom is transferred and delivered, by his debtor, negotiable promissory notes of third persons as collateral security, is required to exercise ordinary diligence to preserve the pecuniary value of the pledge. (Lamberton v. Windom, 12 Minn., 232; First Nat. Bank v. O'Connell, 84 Ia., 377; Plant's Manufacturing Co. v. Falvey, 20 Wis., 200; McQueen's Appeal, 104 Pa. St., 596; Wheeler v. Newbold, 16 N. Y., 369; Colebrooke Coll. Sec., Secs. 85, 106, 114; Semple & Birge Mfg. Co. v. Detwiler, 30 Kan., 386; Westphal v. Ludlow, 6 Fed., 348.) The duty thus imposed upon the pledgee may, if necessary, require him to resort to active measures to protect the pledge and prevent a loss occurring through

the insolvency of the parties liable for their payment. Reasonable and ordinary care is all that he is bound to exercise. If, because of his gross negligence, he fails to collect the same when it might have been done, and the pledgor is injured and the value of the collateral paper lost, he becomes chargeable with the face of the securities as in payment and discharge *pro tanto* of the principal debt. (Coleb. Coll. Sec., Sec. 114.) And the damages resulting to the pledgor by reason of loss occasioned through the supine negligence of the creditor may be set up by way of counter-claim in an action brought against the pledgor upon the principal debt. (Lamberton v. Windom, *supra;* First Nat. Bank. v. O'Connell, *supra.*)

The burden of proving such loss rests upon the pledgor. (Plant's Mfg. Co. v. Falvey, 20 Wis., 200; Barnes v. Bradley, 56 Ark., 105; Reeves v. Plough, 41 Ind., 204; Bank v. Blackwelder, 81 Mo. App., 428.) In Reeves v. Plough it was said that "if the collaterals have been lost for the want of reasonable diligence, the creditors holding them must account for the amount; but such loss cannot be presumed from the mere fact of their remaining uncollected."

We think the negligence and loss was sufficiently established to sustain the finding of the court in the case of the notes barred by the statute of limitations. It was admitted by the pleadings that the notes were worth their face value at the time they were delivered to plaintiff, and that state of affairs must be presumed to have continued in the absence of a showing to the contrary. (Semple & Birge Mfg. Co. v Detwiler, 30 Kan., 386; 2 Pac., 511.) There was no evidence offered by either party to show or tending to show their value at any period subsequent to their delivery; and this statement applies to all the collateral notes. Upon the principle aforesaid, therefore, the court was justified in finding the value of the notes at maturity to be that expressed upon their face, including interest. Upon that subject, the admission of the pleadings was all that was before the court. In the case last above cited it was held that, as

there was evidence tending to prove that at the time the collaterals were turned over to the creditor they were good and collectible, it was sufficient to sustain a finding that the creditor was chargeable with the full amount of collateral notes which had become barred. (See also Fennell v. McGowan, 58 Miss., 261; First Nat. Bank v. O'Connell, *supra*.)

In a note to Griggs v. Day, 32 Am. St. Rep., 704, 719, it is said: "Where it is apparent that the omission to do an act must release a party liable on the instrument, such omission is so clearly negligent, and so likely to result in injury to the pledgor, that there can be no doubt that the pledgee has failed in his duty, and ought to be held answerable for the consequences." And in applying this principle to the case where by inaction of the pledgee action has become barred by the statute of limitations, the want of diligence is said to be so unquestionable that the presumption of negligence can scarcely be rebutted, though it is always open to the pledgee to show that no injury was suffered by the pledgor from the apparent want of diligence, citing Steger v. Bush, Smedes & M., Ch. 172.

Since the notes were good and worth their face value at the time they were delivered to plaintiff, it was incumbent upon the latter to show that their failure to prevent the bar of the statute had not resulted to the injury of the defendant. If suit upon them would have been unavailing the plaintiff should have offered proof tending to establish that fact.

It is contended on behalf of plaintiff that where the pledgee has employed an agent or attorney in connection with the collection of the collaterals, he is not liable for misconduct or negligence of the persons employed, if reasonable care and judgment has been exercised in their selection. But there is no room for the invoking of such a principle in this case, for the reason that no misconduct or negligence on the part of the agent or attorney employed was shown. On the contrary, Mr. Baker testified that, upon receiving information from Mr. Lonabaugh that judgments had been secured upon some of the notes, which was about

February 1, 1898, he immediately wrote to him objecting to suits being brought in the name of the company; and he stated that they never expected or authorized suits to be brought in their name or upon their responsibility. And, indeed, counsel in their brief state that there is an entire lack of anything in the evidence reflecting upon the diligence of the bank and the attorney. However, we are of the opinion that the plaintiff should be charged with the value of the notes thus barred as of the date when the bar of the statute became complete, rather than the date of their maturity. (Sample & Birge Mfg. Co. v. Detwiler, *supra.*)

Although one receiving from his debtor the paper of a third person, as collateral security, is bound to use due diligence in collecting it, and in the event of its loss by the delay of the creditor, he becomes responsible to the debtor for the amount; mere delay is not sufficient to render him liable, for if no loss follows as a consequence of the delay there is no ground for responsibility on his part. And this rule was very properly applied by the learned District Court in respect to the uncollected notes remaining in plaintiff's possession, which were not outlawed. (Coleb. Coll. Secur., Sec. 115.) The only showing of negligence, so far as the outlawed notes are concerned, was that the statute had been permitted to run against them. Had any of those notes been collected the date of their collection, if shown, would have fixed the date for crediting the defendant with the proceeds, although that might have been some time subsequent to their maturity.

The plaintiff was held chargeable with the value of certain of the notes at maturity that had been surrendered to the respective makers, and new notes payable to the plaintiff at a future period taken in place thereof without the knowledge or consent of defendant. It appears that M. R. Enos and James K. Reece were each liable upon three notes. March 23, 1896, they joined in executing to the plaintiff two notes, each for the sum of $98, maturing October 1, 1896. The amount of each renewal note was approximately

the sum then due upon the three notes of the respective makers. The plaintiff thus secured their joint liability for the amount due from both of them, and extended the time of payment by the acceptance of the new and the surrender of the old notes. George W. Peterson was liable upon three notes, and on March 30, 1896, gave the plaintiff a new note in their stead, payable to its order, and due October 1, 1896, signed by himself and one Joel H. Peterson. A. J. Edwards, who was the maker of three notes, on the 4th day of April, 1896, executed a new note for $98, payable October 1, 1896, to the order of the plaintiff.

Upon these facts the defendant was properly held entitled to be credited with the value of the surrendered notes; but such credit should have been allowed as of the date of the surrender and the acceptance of the new obligations, since as between plaintiff and defendant the transactions must be treated as collections of the collateral notes. (Union Nat. Bank v. Post, 93 Ill. App., 339; Haas v. Bank of Commerce, 41 Neb., 754.) The trial court so regarded them, but charged the plaintiff with the value of the notes at the maturity thereof, respectively. For the reasons stated in discussing the notes barred by the statute of limitations, it was improper to treat the surrendered notes as if paid at maturity. The evidence disclosed the time of payment, viz., the date of the renewal notes.

There was no error in charging the plaintiff with the value at maturity of the 104 notes which had been collected. The court found as a fact that the plaintiff had not accounted to the defendant for those notes, and the finding is supported by the evidence. The only sort of accounting is found in the testimony of Mr. Baker, who stated the various amounts that had been received from time to time as proceeds of those notes. He testified that the money was remitted to the plaintiff either by the bank or Mr. Lonabaugh. He mentioned eleven remittances, aggregating the sum of $2,632.71, covering the period between June 4, 1894, the date of the first remittance, and September 13, 1899, when the last item

was received. The amount received June 4, 1894, was $194.21. In January, 1895, the sum of $185 was received. In January, 1896, the sum of $526.60. It is unnecessary here to further itemize the remittances. No explanation was offered of the amount paid, nor the time of payment of any note. Under the evidence, it was impossible for the court to determine when the notes, or any of them, had been collected. It does not appear that plaintiff was unable to show the time of payment of each collateral note, and the amount paid thereon. On the contrary, Mr. Lonabaugh testified that he reported to the company and accounted to them for all collections made, and that he usually sent with remittances a statement of the notes collected.

It is true that the pledgee of collateral paper is entitled, upon default in the payment of the principal debt, to enforce the same, and to retain the collateral until payment; but the law requires that he shall be ready, in the action upon the debt, to produce the collateral securities, or account satisfactorily for their non-production. Upon their non-production, and failing to account therefor, the pledgee is chargeable with the face value of the same. (Coleb. Coll. Sec., Sec. 106.) The reason of the rule is stated to be that the notes may have passed before maturity to an innocent endorsee, without notice of antecedent equities, the pledgee having the full title to them. (Id.) The rule is clearly applicable where the collateral notes have been collected, and the pledgee refuses to account therefor, and no showing is made of the amounts and dates of collections. For aught that the record discloses, the plaintiff may have accepted less than could have been legally collected.

The defendant college is not in a position to complain of the conclusion of law to the effect that plaintiff had exercised ordinary diligence to enforce collection of the notes reduced to judgment.

We are not prepared to say that proper and reasonable diligence did not require the suing out of executions, nor is it necessary that we decide that question. It has been held

that creditors holding judgments as collateral security are remiss in their duties and consequently liable for failure to cause execution to be issued and levied when they might have done so. (See note to Griggs v. Day, 32 Am. St., 704, 719.)

But the defendant was not prejudiced by the decision, even if erroneous. In the same paragraph that holds the plaintiff to have been diligent in the matter of the notes in judgment, it is found that it should not be charged with them nor· their value; and that is fully sustained by the findings of fact, as well as the evidence. Upon the presumption as to value already adverted to, the court found the value of the notes in question, at maturity, to be that expressed upon their face; and there is no finding that the judgments had become valueless, nor was there any showing in the evidence that loss had occurred by· reason of the failure to have execution issued.

The same is true in respect to the uncollected notes, other than those barred, remaining in plaintiff's possession. The defendant offered no evidence to show that any of those notes had become worthless, or that plaintiff's delay had occasioned loss to the college. Indeed, counsel for the college concedes that they cannot complain as to these notes, inasmuch as the trial court found them to be worth their face value at date of judgment.

The court improperly deducted from the value of the collected notes the sum found to be reasonable as an attorney's fee for their collection. We do not assent to the proposition that the finding of fact that a certain sum was a reasonable attorney's fee in the premises was outside of the issue. The allegation of payment was denied by plaintiff's reply, and had the proof shown an actual expense in making collections, and had the court found the expenditures to have been made, as well as to have been reasonable, the plaintiff would have been entitled to a deduction thereof from the amount paid upon the collateral notes. (Cressman v. Whitall, 16 Neb., 592; Furness v. Union Nat. Bank, 147 Ill., 570.)

It does not appear, however, that the plaintiff incurred any expense in enforcing collection. The collateral notes, indeed, provided for the payment of attorney fees by the makers, and it would be as competent to indulge the presumption that they had paid them in addition to the face of the notes and interest, as that the plaintiff had expended the amount in the absence of any proof upon the subject.

There was no proof even of what would have been reasonable as an attorney's fee. The finding must have been based upon the fact, if it has any foundation at all, that the notes provided for a ten per cent. fee. It was unsupported by the evidence, but the plaintiff is not complaining of it and did not except to it; and the defendant, although it preserved an exception to the finding, did not insist upon it by motion for a new trial. In this court the finding, so far as it goes, must be accepted. But for the reasons already given it does not go far enough to support the conclusions of law that plaintiff is entitled to charge the attorney fees to the defendant. A pledgee is not authorized to collect from his pledgor fees or commissions for his *personal* service in collecting collaterals, in the absence of an agreement to that effect. (Mansur-Tebbetts Impl. Co. v. Carey, 45 Pac., 120.) In that case a rejection of testimony, in a similar case, offered to show what was reasonable compensation for the collection of collateral notes, was held to have been proper on the ground that no showing was made of the pledgee's actual expenses.

In its conclusions of law, in computing the amount remaining due to the plaintiff, the court erroneously ignored the fact that the interest upon the principal indebtedness of $4,500 was payable *semi-annually*, according to the tenor of the interest notes; and that the latter, as well as the principal note, drew interest at eighteen per cent. per annum after maturity. Not only does the note itself recite the fact that it bears interest semi-annually, according to the tenor of ten interest notes, giving the amount of their face respectively, but provides that after maturity they shall draw

interest at eighteen per cent.; but the petition alleged the execution of the interest notes, the maturity thereof respectively, and the provision as to interest after maturity, and the answer admitted the execution of such interest notes, "set forth in plaintiff's petition." The principal note and interest note last maturing, only, were sued on, but it is explained in the evidence that the intervening nine interest notes had been cancelled by the plaintiff by the application of the proceeds, from time to time, of the collateral notes, and hence suit was not brought upon them. Owing to the failure of plaintiff to account satisfactorily for the collected notes, by showing the amounts collected and when collected, the court is unable to adopt the method and time of application as shown by the testimony of plaintiff's secretary, since the plaintiff must be held to have had in its hands for application at the proper time the value of the collected notes at their maturity respectively; and must also be charged with the outlawed and surrendered notes as indicated in this opinion. The trial court, however, improperly applied the proceeds or value of the notes, chargeable to plaintiff, to the reduction of the principal debt prior to its maturity, and computed interest on the balance, thus destroying the effect of the interest notes, and requiring the plaintiff practically to accept payment of the principal debt by installments before maturity and in the absence of any agreement therefor.

The collateral notes were all to mature in advance of the maturity of the principal debt, but semi-annually after the date of the latter, beginning with August 1, 1893, an interest note became due and payable. The rule in such cases is that the pledgee is entitled to receive the money upon the collateral notes, which then takes the place of the original securities, and the pledgee is authorized to hold the money until the maturity of the principal obligation, applying the same in satisfaction of the principal debt whenever it becomes due. (Colebrooke Coll. Secur., Sec. 93.) And it follows that if, prior to the final maturity of the debt, any installment or interest becomes due, the pledgee with pro-

ceeds of collaterals in his hands may apply them in payment of such matured interest or installment. But, although the pledgee may have collateral proceeds in his hands, he is not required to apply them in reduction of the debt until it shall become due, because the creditor is not compelled to receive, nor the debtor to pay until maturity. (Id.)

The principal debt was $4,500, due February 1, 1898, bearing interest at eighteen per cent. after maturity. The interest from date until maturity was represented by ten notes, due respectively on the first day of the months of August and February until February, 1898, inclusive; and the face of the note maturing August 1, 1893, was $168.88, and of each other interest note the sum of $157.50; and each interest note was to draw interest at eighteen per cent. per annum after maturity. This being the contract of the parties, the law will not disregard it, but will force the application of the proceeds and value of the collateral notes chargeable to plaintiff only at maturity of the respective notes.

By reason of the liability of the plaintiff for failure to account for the collected notes, its negligence in permitting certain notes to become barred, and its action in extending time of payment upon certain notes, by surrendering them and accepting other notes in their place, it must be charged with the value of those several notes, as indicated in this opinion, and the value thereof as of the times already stated must be treated as proceeds in the hands of the plaintiff for application at the proper time. Those charges are as follows: For collected notes, November 1, 1893, $944.73; November 1, 1894, $1,041.84; November 1, 1895, $1,078.56; November 1, 1896, $31.44. For surrendered notes, April, 1896, $392. For notes barred by the statute of limitations, November 1, 1898, $718.53; November 1, 1899, $756.45.

The amount chargeable November 1, 1893, should be applied first in satisfaction of the interest note due August 1, 1893, with accrued interest to date of application, viz., November 1, 1893. It will be more than sufficient also to discharge the interest notes due respectively in February

and August, 1894. There will be no interest upon any interest note save the first, because at the maturity thereof respectively the funds charged to plaintiff will be more than enough to discharge the same. Upon adding to the fund from time to time the charges as above stated, and deducting at maturity of each subsequently accruing interest note the face amount thereof, until February 1, 1898, a balance will remain to be deducted from the debt when it matured, viz., February 1, 1898, and after such deduction interest should be computed on the remainder until November 1, 1898, at eighteen per cent. per annum, and the value of the outlawed notes of that date deducted from the debt and such accrued interest. Interest upon the amount remaining for one year, at the same rate, should be computed and added, and the value of the outlawed notes charged as of November 1, 1899, deducted therefrom. Upon the balance interest should be computed up to date of judgment, June 14, 1900, at same rate. Computation upon this basis will disclose that the amount due plaintiff at date of judgment was $2,095.24, as shown by a statement of the account cast according to the method suggested, prepared and filed with this opinion.

The only errors found to have been committed occurred in the conclusion of law as based upon the findings of fact, viz.: In respect to the time of charging the values of the surrendered and outlawed notes; in deducting attorney's fees from the value of the collected notes; and in ignoring the interest notes, and applying the values charged in reduction of the debt previous to maturity, and thus depriving plaintiff of a large portion of the face of the interest notes. It is unnecessary, therefore, to remand the cause for new trial. But the judgment should be modified in respect to its amount. The judgment will accordingly be modified so that the amount thereof to be recovered by the plaintiff, as of its date, will be $2,095.24, and as thus modified, the judgment will stand affirmed. The plaintiff should also be required by the judgment to deliver to the clerk of court the interest notes.

The District Court will cause to be entered upon its journal the modification of the judgment as aforesaid, as of the date thereof.                    *Modified and affirmed.*

Corn, J., and Knight, J., concur.